ANNA PURDY, RESPONDENT, v. LOEW'S ST. LOUIS REALTY & AMUSE-MENT CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed May 3, 1927.

1.—Negligence—Duty of Owner of Premises—Invitee. The owner or occupant of premises who induces persons to come upon the premises by invitation, express or implied, owes to such persons the duty of using ordinary care to maintain the premises in a reasonably safe condition.

2.—Same—Theaters—Duty of Owners to Patrons. The owner of a place of entertainment is charged with the duty of exercising all proper precaution, skill, and care commensurate with the circumstances, to maintain the place and every part of it in a reasonably safe condition for the uses to which it is devoted.

3.—Same—Jury Question. Ordinarily negligence is a question of fact for the jury, and this is always so where the question is one about which reasonable minds may differ, even though the act or omission claimed to be negligent is not in controversy.

4.—Evidence—Four-Inch Drop in Floor—Sufficient to Cause Persons Walking on Floor to Fall—Common Knowledge. It is a matter of common knowledge that an abrupt four-inch drop in the level of a floor is sufficient to cause a person to fall, who in the absence of knowledge of its presence, may accidentally step, or allow the foot to slip, off the edge of the higher level.

5.—Negligence—Theaters—Exits—Step-Off in Alleyway—Patron Injured. In an action to recover damages for personal injuries sustained by plaintiff, a theater patron, when she was caused to fall by a step or offset in an alleyway maintained by the defendant as a means of exit from the theater, held the question of defendant's negligence was for the jury.

6.—Same—Same—Private Alley Exit Maintained—Dangerous Step-Off—Vehicular Traffic—No Justification. A theater owner, having housed in

and decorated its alleyway exit in such fashion as to make it apparently a part of its theater building, and give it the appearance of a passageway within its theater building, and having devoted it as a passageway for crowds of patrons departing from its theater, cannot be heard to justify the maintenance of a dangerous trap or pitfall in such passageway on the ground that it was in fact an alleyway subject to the use of vehicular traffic.

**7.—Same—Same—Step-Off in Alley Exit—Patron Injured—Causal Connection—Jury Question.** In an action for damages for personal injuries sustained by plaintiff, a theater patron, when she was caused to fall by a step or offset in an alleyway maintained by the defendant as a means of exit from its theater, proof of causal connection between the defendant's negligence in maintaining such step or offset and plaintiff's injury **held** for the jury.

*Corpus Juris-Cyc. References: Evidence, 23CJ, p. 59, n. 22; Negligence, 29Cyc, p. 453, n. 86; p. 630, n. 47, 50; p. 632, n. 57; p. 639, n. 4; Theaters and Shows, 38Cyc, p. 268, n. 55; p. 269, n. 59; p. 270, n. 65 New; p. 271, n. 71.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Franklin Miller, Judge.

Affirmed.

*Casper S. Yost, Jr.,* for appellant.

The court erred in refusing to give defendant's demurrers to the evidence, for the following reasons: First: The evidence totally failed to show any negligence on the part of the defendant. Waldman v. Skrainka Const. Co., 211 Mo. App. 576; Peck v. Yale Amusement Co., 195 S. W. 1033; Cochran v. Wilson, 229 S. W. 1050; Hathaway v. Chandler, 229 Mass. 92; Brugher v. Buchtenkirch, 167 N. Y. 153; Schaefer v. DeNeergard, 188 N. Y. Sup. 159; Albachten v. Golden Rule, 17 N. & C. C. A. 305; Hoyt v. Woodbury, 200 Mass. 343; Ware v. Evangelical, 181 Mass. 285; Hunnewell v. Haskill, 174 Mass. 557; Adelman v. Altman, 209 Mo. App. 583; Geninazza v. Leonori, 233 S. W. 75; Danescocky v. Siebel, 195 Mo. App. 470; Main v. Lehman, 294 Mo. 579; Shafir v. Sieben, 233 S. W. 423. Second: Plaintiff failed to prove any causal connection between her accident and the alleged negligence of the defendant. Waldman v. Skrainka, 211 Mo. App. 586; Peck v. Yale Amusement Co., 195 S. W. 1033; Benton v. St. Louis, 248 Mo. 109; Kane v. Mo. Pac. Ry. Co., 251 Mo. 13; Harper v. St. Louis Merch. Bridge Term. Co., 187 Mo. 586; Fuller v. Wurstberg, 192 Mich. 447.

*John F. Maloney* and *Marsalek, Stahlhuth & Godfrey* for respondent.

(1) In ruling upon a demurrer offered at the close of the case the court will accept as true all evidence in the record in plaintiff's

favor, and will make every inference of fact in plaintiff's favor which a jury could, with any degree of propriety, draw therefrom. In ruling upon the demurrer the court will not draw inferences of fact in defendant's favor to countervail or overthrow inferences tending to support plaintiff's cause of action. Buesching v. Gas Co., 73 Mo. 219; Hall v. Coal & Coke Co., 260 Mo. 351; Lorton v. Railroad, 306 Mo. 137; Gratiot v. Railroad, 116 Mo. 466. The demurrer cannot be sustained unless the evidence, when considered in the light of the foregoing rule, leaves no room for men of reasonable intelligence to differ on an essential issue in the case. Steffens v. Fisher, 161 Mo. App. 386. (2) The maintenance in a passageway of a step, offset or other condition likely to cause people to fall, of an unusual nature, or at a place where the same would not be excepted, so that one using the passageway would be likely to fail to discover it, raises a question of negligence to be submitted to the jury. Oakley v. Richards et al., 275 Mo. 266; Nephler v. Woodward et al., 200 Mo. 179; Geninaza v. Leonori (Mo. Sup.), 252 S. W. 317; New Theater Co. v. Hartlove, 123 Md. 86; Blumer v. Sullenberg, 221 Pa. 25; Polenske v. Litt Bros. 18 Pa. Super. Ct. 474; Hanley v. James Butler, Inc., 153 N. Y. Supp. 39; Hommel v. Investment Co., 166 Wis. 235; Emmons v. Charlton & Co., 63 Wash. 276; Quirk v. Siegel-Cooper Co., 43 App. Div. 464, 60 N. Y. S. 228, 6 A. N. R. 644; Stratton v. Staples, 59 Me. 94; Fogarty v. Bogart, 43 App. Div. (N. Y.) 430, 6 A. N. R. 650.

SUTTON, C.—The plaintiff, a widow, aged sixty-five, brought this suit to recover damages for personal injuries sustained by her on August 22, 1924, when she was caused to fall by a step or offset in an alleyway maintained by the defendant as a means of exit from its theatre. The trial, with a jury, resulted in a verdict and judgment in favor of plaintiff for $2100, and defendant appeals.

The defendant at the time plaintiff was injured owned and operated the Loew's State Theatre, located on the west half of the block bounded by Seventh and Eighth Streets, and Lucas and Washington Avenues, in the city of St. Louis. The theatre property consists of two buildings and an enclosed bridge, connecting the buildings, over the alleyway in which plaintiff was injured. The south building, at the northeast corner of Washington Avenue and Eighth Street, contains the main entrance, opening on Washington Avenue, and the lobby of the theatre, and also a number of stores. The auditorium of the theatre is located in the north building, at the southeast corner of Lucas Avenue and Eighth Street. A large part of the alleyway is covered over by the enclosed bridge connecting the two buildings, so as to give the entire structure the appearance of one building, and the alleyway somewhat the appearance of a tunnel. There were at the time of plaintiff's injury two exits from the auditorium building,

one of which opened out on Lucas Avenue, and the other on the alleyway in question. Patrons going in at the Washington Avenue entrance would ascend a pair of stairs and go north through the enclosed bridge over the alleyway to the auditorium. It was so arranged that one following this course would not know or realize that there was an alleyway underneath. The alleyway was located upon private ground, owned in common by the owners of the property in the city block in question, and it was marked as a private alley. It extended through the block from Eighth Street to Seventh Street. The theatre stage was at the west or Eighth Street side of the auditorium building. In order to leave the theatre a patron who was seated in the balcony, where plaintiff was before her injury, would go to the east side of the auditorium building, descend a flight of stairs, make a turn, descend more steps, and then, after going down an incline back of the first-floor seats, would go through a doorway which led out on the alleyway between the two theatre buildings, underneath the bridge. Then, by turning to the right and following the alleyway, the patron would finally reach the public sidewalk on Eighth Street. The alleyway is about twenty feet wide, and is floored with concrete. On the north side of the alleyway, running along the wall of the auditorium building, there is a narrow ledge about thirty inches wide and of varying height. At the east end of the south wall of the auditorium building, where the ledge commences, it is about four inches high. In front of the exit door above mentioned, leading from the auditorium building into the alleyway, this ledge is interrupted by a fan-shaped incline or ramp. Commencing again to the west of the ramp the ledge is again about four inches high, and decreases in height until it dies out near Eighth Street. The ramp, or incline, leads from the auditorium exit door to the lower level, or central part of the alleyway. This ramp is about twelve feet wide at its upper end, and broadens out in a fan shape to about sixteen feet wide at the bottom. It is so constructed that one coming out the exit door and turning west along the south wall of the auditorium building would encounter no step to warn him that he was walking along the surface of the narrow ledge.

At the time of plaintiff's injury the theatre was new, the day of the accident being the second day it had been in operation. Plaintiff reached the theatre, in company with several friends, about seven o'clock in the evening, and went in at the Washington Avenue entrance. She had never been in the building before and was unfamiliar with it. She went up to the second floor and through the enclosed bridge to the auditorium. She had no opportunity to see the alleyway and did not know it was there. The show that plaintiff saw was the first show of that evening. The auditorium was fully occupied—it was crowded. Plaintiff sat in the balcony or upper part

of the auditorium. A great crowd of the patrons left at the conclusion of this performance. Describing the situation, plaintiff testified:

"Q. And at the conclusion of the performance, when you started to get up and leave, did anybody else start to get up and leave? A. Oh, yes.

"Q. Well, how many? A. Oh, I don't know. We were just moving along; it was full and we were just moving.

"Q. What do you mean by 'full'? A. Well, there was a very large number of people there. We were just walking ahead of one another very slowly to get out.

"Q. Can you give any idea as to what proportion of the audience got up and left at the conclusion of the performance? A. No, I can't.

"Q. Well, was there another performance after this one? There was still another one? A. Yes.

"Q. So some of them stayed? A. Yes.

"Q. But a great many left? A. Yes, sir.

"Q. In leaving, just describe where you went. A. As we came down from the balcony we went right along to the stairway to go downstairs and we were just barely moving it was so crowded, and when we got down to the bottom of the stairs, all but two or three, there was a little platform there and there was a gentlemen on each side and they said, 'Go this way; this way out,' and we—I was on the right of the stairway and I turned to the left and I went—

"Q. (Interrupting) Who were those gentlemen who were standing there directing the crowd? A. I suppose they were ushers; I don't know."

From the platform at the bottom of the stairs plaintiff descended two or three more steps and turned to the left with the crowd. She and her friends followed the crowd, walking slowly, to get out. She was going along an incline. She did not notice when she went through the exit door into the alleyway. She did not see any exit sign, and thought she was still in the theatre. She did not know there was an exit from the building at that place. There were lights above her and there was lattice work decorated with flowers at the side. Plaintiff noticed no difference in lighting effect between the inside of the theatre and this alleyway.

Following the crowd, plaintiff having reached the alleyway (although she did not then know what it was), turned west along the south wall of the auditorium building. The plaintiff stated that there was the regular crowd of people that would come out of the show, and they just walked along close together. Describing the crowd in the alleyway, she testified:

"The Court (Q.): Could you see the ground or surface on which you were walking? A. No, sir.

"Mr. Marsalek (Q.): What was the condition of the entire alleyway with reference to people? A. Just seemed to be even.

"Q. You mean it was filled with people from side to side? A. Yes, sir."

In walking to the west, plaintiff stated there was just one person, a stranger, between her and the wall of the auditorium building. She kept on walking about parallel to the wall. She saw nobody step down a step at any time, and did not know that there was any step or offset or sidewalk there. Two of her friends were ahead of her, and the plaintiff thought the other was right alongside of her. She had gone eight or ten feet when she slipped off of something and fell. Describing her fall she stated:

"A. Well, I was walking along and my foot slipped off of something and it threw me forward and as it threw me forward I put my hands out and as I fell I fell on my hands and knees and went all the way down.

"The Court (Q.): Which foot slipped? A. The left foot and the—and I fell flat, and immediately the crowd gathered about me.

"Q. After you had fallen, did you then discover any offset or step there at the place you had been walking? A. When I laid there, before they picked me up, I noticed the offset, but I didn't know what it was.

"Q. You say there was a jog? A. Yes, but I couldn't see what it was. I didn't know anything about it—I knew it was something I slipped off of, but I couldn't tell.

"Q. How near were you, as you lay there, to that jog or offset? A. Oh, right close to it—as near as I could fall.

"Q. You were right practically against it? A. Yes, sir.

"The Court (Q.): Did you fall full length or on your hands, or how? A. No; it just threw me forward and I went to protect myself—threw my hands out, and of course, it threw me on my hands and knees and I went on down.

"Q. How much did you weigh at that time? A. Well, about 242 or 44 pounds."

On re-direct examination, she explained that her left foot slipped off of something and went down. She did not know what it was until afterward. The people in front and alongside of her were so close that she could not see far around her; she could not see right down at her left by looking down; people were walking right alongside of her.

Miss Rose Becker, one of the ladies who accompanied plaintiff at the time of her injury, testified that she and plaintiff were walking alongside of one another coming down the stairs and when they got out into the alleyway she happened to step a trifle before plaintiff, and that she, witness, made a misstep on this little curb or step-

off there, and turned around to warn plaintiff, but plaintiff had already fallen. The witness testified further:

"Q. You say there were a great many people there. Will you describe as definitely as you can the condition of the areaway or alleyway with reference to being crowded? A. Well, very much crowded; that is, you could not see before you well enough to know there was any step-off whatever."

The sole contention of defendant in this court is that its demurrer to the evidence should have been sustained, on the grounds (1) that there was no proof of negligence on defendant's part, and (2) that there was no causal connection shown between defendant's negligence and the plaintiff's injury.

We have found no cases in the books just like the present case, though analogous cases are not wanting.

It is well-settled doctrine that the owner or occupant of premises who induces persons to come upon the premises by invitation, express or implied, owes to such persons the duty of using ordinary care to maintain the premises in a reasonably safe condition. Agreeably to this doctrine, it is held that the owner of a place of entertainment is charged with the duty of exercising all proper precaution, skill, and care commensurate with the circumstances, to maintain the place and every part of it in a reasonably safe condition for the uses to which it is devoted. [Bloomer v. Snellenburg, 221 Pa. 25; Polenske v. Lit Brothers, 18 Pa. Superior Ct. 474; Hanley v. James Butler, 153 N. Y. Supp. 39; Hommel v. Badger State Inv. Co., 166 Wis. 235; Emmons v. Charlton & Co., 63 Wash. 276; Quirk v. Siegel-Cooper Co., 60 N. Y. Supp. 228; Stratton v. Staples, 59 Me. 94; Fogarty v. Bogard, 43 App. Div. (N. Y.) 430; Lusk v. Peck, 199 N. Y. 546; Scott v. University of Michigan Athletic Ass'n, 152 Mich. 684; Schofield v. Wood, 170 Mass. 415; Williams v. Mineral City Park Ass'n, 128 Ia. 32; King v. Ringland (Mo. App.), 130 S. W. 482; Oakley v. Richards, 275 Mo. 266, 204 S. W. 505; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488.]

It is well also to be reminded here of the doctrine that ordinarily negligence is a question of fact for the jury, and that this is always so where the question is one about which reasonable minds may differ, even though the act or omission claimed to be negligent, is not in controversy. [Gratiot v. Missouri Pacific Ry. Co., 116 Mo. 450, 21 S. W. 1094; Tabler v. Hannibal & St. Joseph R. Co., 93 Mo. 79, 5 S. W. 810.]

In the present case the defendant housed in and decorated its private alleyway so as to make it apparently a part of its theatre building, and give it the appearance of an ordinary passageway within the building, to be used by its patrons as an outlet from the building

to the street. It was being so used by a large crowd of patrons, under the immediate direction of the attendants stationed at or near the exit from the building to the alleyway, at the time the plaintiff was injured. The exit or doorway through which the crowd passed was twelve feet wide. There was a gradual incline expanding into a fan shape from the doorway to the lower level of the floor of the alleyway. There was a narrow ledge, called a sidewalk, thirty inches wide, extending along the north side of the alleyway, against the wall of the auditorium building. There was a vertical drop of four inches from the surface of the ledge to the lower level of the alleyway. This construction, it must be confessed, was somewhat extraordinary, in view of the purpose to which the alleyway was devoted. It is a matter of common knowledge that an abrupt four-inch drop in the level of a floor is sufficient to cause a person to fall, who, in the absence of knowledge of its presence, may accidentally step, or allow the foot to slip, off the edge of the higher level. The defendant ought to have anticipated that crowds discharged from the twelve-foot doorway would fill the alleyway and use its entire breadth in passing from the building to the street. Certainly, defendant could not have supposed that these crowds would use only the thirty-inch ledge or sidewalk extending along the side of the alleyway. It was to be expected that persons in the crowd nearest the right-hand side of the doorway would, on passing out of the doorway, turn immediately to the right and walk along this narrow ledge or sidewalk. There was nothing to indicate to them the abrupt drop in the level of the floor, unless they actually saw it. On the occasion of the plaintiff's injury, she was unable to see the floor of the alleyway on account of the press of the crowd about her, a situation which, we think, the defendant should have anticipated. Plaintiff was walking along this narrow ledge beside another person, who was between her and the wall of the auditorium building. There was scant room for two persons to walk on this narrow ledge. Plaintiff had no knowledge that there was an abrupt drop in the level of the floor, and had no reason to suspect it. As she walked along this narrow ledge, laboring under the belief, induced by the deceptive appearances created by defendant, that she was walking on the level floor of a passageway within the theatre building, her foot slipped from the edge of the ledge, and she thereby fell and was injured, a most natural result of the pitfall which the defendant provided and maintained. Under these facts, it seems clear that the question of defendant's negligence was for the jury.

The defendant contends, however, that it was its duty under the law to construct a sidewalk along the side of the alleyway for the use of pedestrians, so as to segregate the pedestrians from the vehicular traffic, and that it cannot be charged with negligence for hav-

ing discharged that duty. In support of this contention, the defend-ant relies on Shafir v. Sieben (Mo.), 233 S. W. 419, wherein it is said that the law divides the streets of cities into separate ways for the accommodation of footmen and vehicles, and that it is the duty of cities to maintain such division in order to preserve the pedestrians from the inconvenience and danger of mingling with the vehicular traffic. What is said in that case is said with reference to public streets, and has no application to private alleyways intended for use by the vehicles of a few owners of property thereon. It is true the evidence shows that the public made some use of the alleyway involved here, for vehicular traffic, but, this being a private alleyway, defendant had the right to exclude the public from it. But, if it was the duty of defendant to maintain a sidewalk along the side of the alleyway to segregate the pedestrians from the vehicular traffic, it failed woefully in the discharge of that duty. It is inconceivable that the defendant expected or intended that the crowds which would pass through the twelve-foot exit or doorway into the alleyway, would be accommodated by a thirty-inch ledge placed against the wall of the auditorium building along the side of the alleyway. Aside from this, defendant having housed in and decorated its alleyway in such fashion as to make it apparently a part of its theatre building and give it the appearance of a passageway within its theatre building, and having devoted it as a passageway for crowds of patrons departing from its theatre, ought not be heard to justify the maintenance of a dangerous trap or pitfall in such passageway on the ground that it was in fact an alleyway subject to the use of vehicular traffic.

There is no merit in defendant's contention that there was no causal connection shown between the defendant's negligence and the plaintiff's injury. The proof of causal connection is not only sufficient but well nigh conclusive. It is difficult to imagine how the jury could have arrived at any other conclusion under the evidence than that plaintiff's foot slipped from the edge of the thirty-inch ledge or walk, and that she thereby fell and was injured.

We have examined the cases cited by the defendant in support of its contentions herein, and find them clearly distinguishable on their facts from the present case.

The demurrer to the evidence was properly refused.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.