## HENRY v. PUBLIX THEATRES CORPORATION.
### No. 10661.

Court of Civil Appeals of Texas. Dallas.
Jan. 4, 1930.
Rehearing Denied March 15, 1930.

696

Renfro, Ledbetter & McCombs, of Dallas, for appellant.

Thompson, Knight, Baker & Harris and Adair Rembert, all of Dallas, for appellee.

JONES, C. J.

Appellant, Jean Henry, instituted this suit in a district court of Dallas County against appellee, Publix Theatres Corporation, to recover damages for personal injuries received while attending a moving picture performance in the Palace Theatre, a building operated by appellee. At the conclusion of appellant's testimony, the jury returned a verdict in favor of appellee under peremptory instruction by the court. Appellant has duly prosecuted an appeal to this court. The following is a sufficient statement of the case for an understanding of the issues discussed:

Appellant attended an evening performance at appellee's theater, in company with a young man as an escort, who purchased tickets for them at the price charged for such performance. They entered the theater building, and were escorted by an usher to a seat on the lower floor near the rear of such building, and approximately under the front of the balcony, or second story of the building. This balcony was about 20 feet above the lower floor. Appellant and her escort entered the building a short time after 6 o'clock p. m. After the performance had proceeded for some time, a girl, Mary Lou Bills, fell from the balcony and struck appellant with her body across the neck and shoulders, painfully and seriously injuring her. The evidence discloses that Mary Lou Bills had entered the theater about 4 p. m. of the same afternoon, in company with another girl of about her age, they being about fifteen years of age, and had remained therein during the entire time. They were seated in the front row of the balcony, just above appellant. This girl was not a witness at this trial, though it was shown, on the cross-examination of appellant, that she had testified as a witness for appellant at a previous trial of the case, and was now residing in the city. Her companion testified at this trial to the effect that, immediately before her fall from the balcony, Mary Lou Bills arose from her seat in a standing position, and stated that she was going to get a drink of water. Immediately after this statement the witness turned to recover her purse that had dropped; and, while doing so, heard a scream, looked over the rail, and saw Mary Lou Bills as she was falling below. The description given of the position of the body of Mary Lou Bills is very meager, but the inference from such description is that she was falling in an outstretched position, with her hands extended and her body parallel to the floor. Another witness corroborated the statement as to the position of the body while it was falling.

Around the end of this balcony there is a railing to protect patrons in the balcony from stepping off or falling therefrom. This railing rests on a base, and the height from the floor of the balcony to the top of the railing is 29 inches; the height of the base being 16 inches and that of the railing proper 13 inches. The width of the aisle, forming a passageway for those occupying the front row of seats in the balcony, is 17 inches from the end of the seat to the side of the base. The testimony is that the knees of one "crumpling down in the seat" would touch the base. There were other people in the front row of the balcony, but as to the number the record does not show, other than that the balcony itself, which has ten rows of seats.

and fourteen seats to the row, was from one-half to three-fourths filled. The lower floor of the theater appears to have been fairly filled.

It appears that at the time of the fall of Mary Lou Bills a rather thrilling part of the play was being shown, and all those who testified had their eyes and their minds on the performance until arrested by the scream. At that time, the evidence is that the theater was so darkened that the escort of appellant did not see her for some little time after she had been hurt, and, when seen, she was in a "crumpled-up position" on the floor. While the evidence does not disclose that this darkness extended to the balcony, the only inference to be drawn is that such was the case, and we find as a fact that at the time Mary Lou Bills stood up from her seat in the balcony, for the purpose of momentarily leaving such seat, the balcony was in darkness.

While appellant was being cross-examined, it was disclosed that there had been a previous trial, and appellee introduced in evidence a paragraph from an abandoned petition, upon which petition the previous trial was had. This paragraph of said petition alleged, in effect, that, because of the insufficient ventilation and the negligent control of the heating of the theater on the occasion in question, Mary Lou Bills was caused to become ill and fainted, which caused her to fall from the balcony to the lower floor. The allegation of negligence in this respect was abandoned in the amended petition on which this trial was had.

In cross-examination of one of the medical witnesses called by appellant, it was shown that such physician had received a history of appellant's injury, and that he understood from such history that a girl had fainted in the balcony of the theater and had fallen upon the neck and shoulders of appellant. It is not stated from whom he received this history.

The negligence alleged by appellant in the amended petition is to the effect that the railing around the balcony was too low to constitute a support for the hand or body to prevent falling, if a person using the aisle next to the railing should become overbalanced, and the aisle or passageway next to the railing is so narrow that a safe exit could not be made by one seated in the front row of the balcony, and that, by reason of such narrowness of the aisle and the low height of the railing, a passage from the front seat was rendered difficult and dangerous, that the appellee was guilty of negligence in maintaining the balcony in such a dangerous condition, and that such negligence was a proximate cause of the falling of Mary Lou Bills and the injury to appellant.

Certain ordinances of the city of Dallas, prescribing the minimum width for aisles in theaters and other public buildings, were pleaded by appellant, but this pleading was stricken out on exceptions by appellee. It was alleged in this pleading that the aisle in question was substantially of less width than is permitted to be maintained by such city ordinances.

The action of the trial court, in taking the case from the jury and giving peremptory instruction in favor of appellee, can be sustained only on one of two theories, to wit, either that the evidence is insufficient to raise an issue of appellee's negligence, or that, if such issue is raised by the evidence and resolved in appellant's favor, such negligence, as a matter of law, was not the proximate cause of appellant's injury.

As the operator of a public theater, to the performance of which all persons were invited to attend on the payment of the admission price, appellee is charged with the duty to exercise ordinary care for the safety of those who respond to its invitation and attend such performance. To every such person there is an implied warranty by appellee that such care has been exercised for his safety. A breach of this duty by appellee will constitute negligence. If an attendant to a performance given in its theater should receive an injury proximately resulting from such negligence, the appellee would be responsible to the injured party for the damages suffered. When appellant entered the theater on the occasion in question, and was seated by an usher at a place immediately under the front end of the balcony, appellee thereby assured her that the seat could be occupied during the performance with reasonable safety to herself. This assurance necessarily carried with it the implied warranty that the guard railing in the balcony, directly over her, was of such construction as to height, and that the aisle next to said railing was of such width, as would be maintained by an ordinarily prudent person conducting the same character of business under similar conditions. An ordinarily prudent person always has due regard for the safety of others and provides against any foreseeable occurrence, the natural consequence of which probably would result in injury to another person.

The effect of appellant's allegations as to negligence is that in a crowded, darkened balcony, a railing 29 inches high is not of such height, when an aisle only 17 inches wide is maintained next to said railing, to be reasonably safe for the exit of those occupying seats in the balcony, and consequently not reasonably safe to those occupying seats below and under such railing. The proof established the height of the railing and width of the aisle to be as alleged, and also that the theater was dark and the front row of seats in the balcony was occupied; that the girl, Mary Lou Bills, arose from this front row of seats to leave the theater, and that immediately thereafter she fell over the rail-

ing; that her fall resulted in appellant's injury. The immediate cause of this fall is left to inference from the other facts and circumstances in the case. When Miss Bills was first seen, after she had screamed, she was below the railing, falling with her body parallel to the floor and her hands outstretched. It is true that there is evidence of a physician that he received a history of appellant's injury to the effect that a girl had fainted and fallen below. The evidence is silent as to the person from whom this history was received. The position her body was in would seem to disprove the conclusion that she was in a faint at the time, and was at least sufficient to raise an issue of fact in respect thereto, if the evidence of the doctor should be considered as competent to show that Miss Bills had fainted on the occasion in question. The first question then is, Are these facts and circumstances sufficient to raise an issue of negligence?

■ We do not believe that the facts here disclosed permit the application of the doctrine of res ipsa loquitur. Therefore we cannot indulge a presumption of negligence from the happening of the accident, and the burden of proving such negligence rests upon appellant. The falling of a person from a balcony in a public theater is such an occurrence that does not happen in the ordinary course of things, if the management has used ordinary care to guard against such an occurrence. Such an occurrence could be brought about by an occupant of the balcony attempting to use the narrow and darkened aisle for exit, and in such attempt is suddenly precipitated against the railing, and is unable to protect himself in such an emergency from falling on account of the railing being too low for such purpose. It is a reasonable inference to be drawn from the evidence that the fall of Miss Bills resulted from these causes.

■■ Before the trial court was warranted in giving peremptory instruction, every reasonable inference from the evidence must have been resolved in appellant's favor. The evidence warranting the inference that the falling of Miss Bills was contributed to, if not caused, by the narrow aisle and the low railing maintained by appellee in its theater, it follows that an issue of fact, as to the cause of her fall, was presented, which required a submission of such issue to the jury.

■ Does the evidence raise an issue of the negligence of appellee in its maintenance of the aisle at the width shown and the railing at the height shown? It must be borne in mind that buildings in which moving pictures are shown are always darkened during the time of such an exhibition. It was the duty of appellant to exercise ordinary care to maintain the aisle in question in such a manner that those who have occasion to use the

aisle in the darkness of the building may do so with reasonable safety to themselves. When the seats on the front row of the balcony are occupied, the width of the aisle presents a very narrow passageway for one making his exit. It is a reasonable inference to be drawn from the evidence that a person using such narrow passageway in the dark not unlikely would be thrown against this railing, for which reason it was the duty of appellee to exercise ordinary care to maintain the railing at a height that would afford protection to those using the narrow and hazardous passageway. As to whether appellee exercised such care in respect to the aisle and railing in the instant case we think clearly presents an issue to be submitted to the jury under proper instruction.

■ From the above discussion, it necessarily follows that, if a jury should determine that appellee was negligent in the manner in which it maintained the aisle and railing, and that, because of the narrowness of the aisle and the height of the railing, Miss Bills was caused to fall, the question of whether this negligence was the proximate cause of the injury to appellant is an issue of fact to be determined by the jury. We therefore hold that the court erred in giving peremptory instructions. The following authorities sustain this conclusion: Avery v. Port Arthur (Tex. Civ. App.) 266 S. W. 578; Purdy v. Loew's et al., 220 Mo. App. 854, 294 S. W. 751; Majestic Theater Co. v. Lutz, 210 Ky. 92, 275 S. W. 17; Ella Durning et al. v. Samuel Hyman, 286 Pa. 376, 133 A. 568, 53 A. L. R. 851, and cases cited in note; Magruder v. Columbia Amusement Co., 218 Ky. 761, 292 S. W. 341; Bass v. Southern Interprises, 32 Ga. App. 399, 123 S. E. 753; G. A. Boeckling Co. v. Slattery, 26 Ohio App. 261, 160 N. E. 99.

■ We are also of opinion that the court erred in sustaining the exceptions to appellant's plea alleging certain ordinances of the city of Dallas. The aisle was constructed in violation of the ordinances pleaded, and therefore the pleading laid the basis for the admission of the ordinances as evidence material to appellant's case. The question as to whether the pleading is sufficient to show any causal connection between the alleged violation of the ordinance and the injury received is sufficiently discussed heretofore.

For the reasons above stated, we are of opinion that this case should be reversed and remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee has filed a motion for rehearing, in which it is most earnestly insisted that the court erred in reversing and remanding this case for a new trial. It is especially insisted that the evidence is insufficient to raise an issue of fact as to the alleged negli-

gence being the proximate cause of the injury; that the only conclusion to draw from the evidence is that appellee's injury resulted from the unforeseeable cause of the fainting and falling over the banister, guarding the front of the balcony, and striking and injuring appellant. The earnestness with which this contention is presented by able counsel has caused us carefully again to review the record and our conclusions announced in the original opinion. We are unable to agree with counsel for appellee as to the legal effect of the evidence in the record, and must adhere to our original opinion.

■ It is elementary that liability for personal injuries is dependent in the law of negligence upon the presence of two facts; namely: (1) Negligence on the part of defendant, either in setting a harmful force in motion, or, as in the instant case, in creating a dangerous situation from which a harmful force may be set in motion and a foreseeable injury to another results; and (2) an injury which proximately results therefrom. In the instant case, the evidence, in our opinion, clearly raises the issue of the negligence of appellee in creating a dangerous condition as to the use of the aisle in question by patrons of appellee's theater, and we shall not enlarge upon the discussion in the original opinion in this respect.

■ We believe the evidence is sufficient to submit to the jury, as a disputed issue of fact, that the injury to appellant was the proximate result of such negligence. As appears from the original opinion, we conclude that the evidence did not establish as a matter of law the cause of the falling of the girl, Mary Lou Bills. It is true that in an abandoned pleading appellant alleged that this girl was caused to faint because of the negligence of appellee in not maintaining a proper ventilation in its theater. This evidence was correctly admitted by the trial court, and is entitled to be considered with other evidence on this issue. The fact that appellant went to trial on this issue, and then in this second trial abandoned the allegations, and thereby impliedly admitted that such ground of recovery could not be established, to our minds weakens the probative force of this evidence. Certainly it cannot be said that this establishes as a matter of law that Mary Lou Bills fell on the occasion in question because she fainted. We pointed out, furthermore, that direct evidence as to the position of the girl's body while she was falling tended to contradict the assertion that she fainted, and thereby was caused to fall from the balcony. While this evidence contained in the abandoned pleading is not sufficient to establish as a matter of law the cause of said fall, it is, of course, sufficient to raise an issue of such cause. Was there any evidence of probative force controverting this evidence as to the cause of the fall and raising the issue that such occurrence was caused by the negligence of appellant?

■ Generally, it may be said that such an issue can be raised either by direct evidence or by a reasonable inference arising from a fair deduction from evidence establishing existing facts. An established existing condition of a narrow aisle, its space approximately occupied by those using the adjacent seats, and safeguarded only by a low protecting rail, could have caused the fall as stated in the original opinion. Hence an inference that such fall happened because of this condition is not a mere speculation, but is a fair deduction from established facts. A trial court is no more warranted in resolving a fair deduction, or a reasonable inference, drawn from established facts, against appellee, than it would be warranted in so resolving any other disputed evidence. In moving for peremptory instruction, appellee must be deemed to have admitted the truth of all material evidence offered by appellant. It also must be deemed to have admitted as a fact every favorable inference, fairly and reasonably deducible from such evidence. If it is fairly and reasonably deducible from the evidence that, in the instant case, Mary Lou Bills was caused to fall by reason of stumbling in the darkened and narrow aisle, and was unable to protect herself on account of a low guard rail, then such inference must be deemed by the trial court to have been admitted as a fact by appellee when it presented the motion for peremptory instruction. This the trial court did not do, but must have regarded such deduction as mere speculation unwarranted from the facts. To this we could not agree, and hence reversed and remanded the case.

The motion for rehearing is overruled.

Overruled.