**BOLIN OIL COMPANY, Appellant,**

v.

**M. W. STAPLES et al., Appellees.**

**No. 17378.**

Court of Civil Appeals of Texas, Fort Worth.

May 25, 1973.

Rehearing Denied June 22, 1973.

Prothro & Sellers, and Lee Sellers, Wichita Falls, for appellant.

Fillmore, Parish, Martin, Kramer & Fillmore, and H. Dustin Fillmore, Wichita Falls, for appellees.

## OPINION

BREWSTER, Justice.

The trial court rendered judgment denying the plaintiff any recovery against the defendants and the plaintiff has brought this appeal.

The suit was instituted by Bolin Oil Company (a partnership) plaintiff, against

M. W. Staples, Staples Oil Company (a corporation) and T. A. Hester, Inc. (a corporation) defendants, to recover under a written operating agreement the defendants' pro rata part of the expense of drilling an oil well in Wilbarger County on a lease owned by the parties jointly.

In the defendants' trial pleading they answered that the plaintiff had breached the operating agreement under which plaintiff was drilling the well for defendants in that plaintiff failed to conduct the drilling operations in a good and workmanlike manner and that as a result of such failure the well was lost and defendants and the other well owners were thereby damaged in an amount of more than $45,000.00. Defendants also alleged that the tubing was dropped into the well hole through negligence in the manner in which the tubing was being lowered into the well and that plaintiff was responsible to defendants for the loss caused thereby under the terms of the operating agreement.

In defendants' trial amendment they alleged:

"Plaintiff failed to conduct its operations in a good and workmanlike manner and with due diligence as follows:

"a. Plaintiff used equipment, to-wit, elevators, which Plaintiff knew, or in' the exercise of ordinary care should have known, were unfit for such use;

"b. Plaintiff permitted equipment, to-wit, elevators, to be used on such well when Plaintiff knew, or in the exercise of ordinary care should have known, that such equipment was unfit;

"c. Plaintiff, through its agents, servants, and/or employees, failed to close the elevators from which the string of tubing was suspended; . . . ."

The defendants then prayed that the damages sustained by them be offset against the amount that plaintiff was herein suing defendants for and that plaintiff be denied any recovery against defendants.

When the case came on for trial, defendants admitted that they were liable to plaintiff for their proportionate part of the cost of drilling the well, as had been alleged in plaintiff's petition, but contended that they were entitled to an offset against such sums of the damages caused by plaintiff as referred to above.

The trial was before a jury which answered the three special issues submitted to it in favor of the defendants.

Upon receipt of this verdict the trial court rendered the judgment appealed from denying plaintiff a recovery.

It was undisputed that the plaintiff and defendants jointly owned certain oil and gas leases and that the well involved was located on one of those leases. Prior to the occasion in question the parties had entered into a written agreement, which they designated "Operating Agreement," pertaining to the operation and development of their jointly owned oil and gas leases which contained, among others, the following provisions:

"Section 1. Operator

"The First Party (Bolin Oil Company) is to be the Operator of said leases, subject to the conditions hereinafter set forth.

"Section 2. Costs to be Shared

"All expense of development and operation of said leases shall be borne and paid by the parties hereto in proportion to the interest owned by each in said leases, as shown above. . . .

"Section 3. Further Drilling

"First Party shall have the right to drill all wells on the above described leases . . . . First Party shall conduct the drilling operations, if any, as Independent Contractor. By 'Independent Contractor' is meant that First Party acts in two capacities—he acts as joint owner with Second Parties and also as drilling contractor. As drilling contractor, he agrees to conduct such drilling operations, if any, in a good

and workmanlike manner and with due diligence. As such contractor, he shall furnish all machinery, equipment, labor, water, fuel and rotary rig.

"Section 4. Duties of Operator

"Subject to the terms hereof, First Party, as Operator, shall have the following duties:

"(a) Operator, in behalf of the parties hereto and subject to the provisions hereof, shall have the sole and exclusive charge of all drilling, development, and production operations on leases covered hereby. Such operation shall be conducted in an economical, skillful and workmanlike manner . . . ."

This operating agreement is the basis of the claims of both plaintiff and defendants.

All of the joint owners mutually agreed to the drilling of the oil well in question. Bolin Oil Company had undertaken to and was on the occasion in question engaged in drilling the well as drilling contractor pursuant to the terms of the Operating Agreement above referred to.

At plaintiff's request H. C. Leach Construction Company, Inc., furnished the equipment and the crew that performed the completion operation on the well. Plaintiff's production superintendent, W. R. Hopkins, was present during all of this completion operation and he testified that at all times the members of the Leach crew were under his supervision and control. While the well was being completed the Leach crew dropped the tubing into the hole and the well was thereby caused to be lost.

Plaintiff's first two points of error are that the court erred in submitting Issue No. 2 to the jury (1) because there was no evidence to raise the issue, and (2) because the evidence was insufficient to raise the issue.

We overrule these two points.

Issue No. 2 was: "Do you find from a preponderance of the evidence that in dropping the tubing in the hole that the same amounted to a failure to conduct such operation in a skillful and workmanlike manner?" The jury's answer was: "We do."

In connection with that issue the court gave the following instruction: "You are instructed that by the term 'skillful and workmanlike manner' is meant the manner in which an ordinary and prudent person, in the exercise of ordinary care, would have performed the particular work under the same or similar circumstances."

The principle evidence that defendants rely on as support for the jury's answer to this Issue No. 2 consists of alleged admissions by plaintiff (Bolin Oil Company) contained in: (1) an answer and cross-action that it filed in another lawsuit that was filed against Bolin Oil Company by Leach Construction Company seeking to recover the latter's charges for services it rendered Bolin Oil Company on the occasion when the tubing was dropped; (2) the affidavit of W. R. Hopkins, plaintiff's production superintendent, which affidavit plaintiff had filed in the other case in support of its contentions at a hearing of a motion for summary judgment filed in that other case; and (3) a letter dated May 5, 1969, written for Bolin Oil Company by Phil Bolin, the managing partner in that partnership, to Leach Construction Company, stating their contentions as to the transaction in question.

Each of those items was admitted into evidence by the court.

Bolin Oil Company's cross-action in the other suit filed by Leach Construction Company contained the following allegations: Paragraph III—". . . At such time, such well had been completed to the point that it was necessary to install or 'run' therein tubing, through which oil produced from such well would flow. That the cross-defendant's (Leach Construction Company's) employees commenced to run such tubing . . . into such well and had installed . . . 40 joints . . .

of such tubing when the elevators, from which the tubing being installed in such well was suspended, became unlatched. That there was nothing left to hold . . . such tubing, to the end that the entire 40 joints which had already been run into the hole dropped into the well, causing the casing . . . in such well . . . to collapse and to break in several places. . . . Efforts to repair the well and complete it . . . were unsuccessful to the end that such well was plugged and abandoned." Paragraph IV —"That had such well been properly completed in accordance with the usual and customary standards in the industry at the time, it would have been commercially productive . . . ." Paragraph V— " . . . *the cross-defendant and its agents . . . were negligent at the time of the damage to such well as hereinbefore alleged in that they failed to properly latch or close the elevators from which such tubing was suspended and that such act or omission was a proximate cause of the cross-plaintiff's damages* as hereinafter alleged." (Emphasis ours.) Paragraph VI—"In the alternative . . . the equipment . . . from which the tubing . . . was suspended, was under the exclusive control of the cross-defendant . . . and that if said equipment is maintained and operated with ordinary care . . . such elevators will not become unlatched and permit tubing . . . suspended therefrom to fall." Paragraph VII—" . . . the well was drilled . . . at . . . cost of $48,265.74, and that the same was completely ruined . . . by . . . cross-defendant's negligence to cross-plaintiff's damage in that amount."

The defendants introduced a part of the affidavit of W. R. Hopkins into evidence in this case. Bolin Oil Company had filed that affidavit in the other lawsuit that it had with Leach Construction Company and filed it in support of its contentions made at a hearing of a motion for summary judgment. The part admitted into evidence was in substance as follows: that he (Hopkins) is employed by Bolin Oil Company as its production superintendent; that the employees of Leach Construction Company who were operating Leach's rig on the occasion in question were negligent in that they were operating the completion rig in such a manner as to permit the opening of the elevators from around such string of tubing; that he has been engaged in the producing end of the oil and gas business for many years and has been in charge of the completion of many wells, and that to his knowledge elevators such as those involved in this case do not become unlatched and permit tubing to which same are attached to drop in the well if same are maintained, used and operated with ordinary care.

The third item, the letter of May 5, 1969, from Bolin Oil Company to Leach Construction Company was signed by Phil Bolin, its managing partner, and was as follows:

"This is to advise that we consider the loss of our above captioned hole near completion to be the direct result of your negligence and defective equipment.

"You will recall that your well servicing machine manned by your personnel was running tubing in such a manner as to allow the tubing to escape the elevators and fall in the hole by which act the hole, including casing and tubing, was damaged beyond recovery and was lost to us for all purposes at a total cost of more than $45,000.00.

"We are holding your invoices for the charges made for this work pending a settlement of your obligation to us as above indicated."

It is Bolin Oil Company's position in this case that no negligent act or omission for which it is responsible occurred that caused the tubing to drop into the hole on the occasion in question. It also contends that it did not breach its obligation to drill the well for the owners in a good and workmanlike manner.

■ The law is that any statement made by a party or on his behalf which is inconsistent with his present position is admissible against him as an admission. Campbell v. McLaughlin, 280 S.W. 189 (Tex.Com.App., 1926) and Addison v. Ball, 262 S.W. 877 (Fort Worth Civ.App., 1924, writ dism.). This rule extends to and includes admissions made by a party in pleadings he filed in another lawsuit. If such a pleading filed by a party in another lawsuit contains statements inconsistent with the party's present position they are admissible against him as admissions. Hamilton v. Van Hook, 26 Tex. 302 (1862); Henry v. Publix Theatres Corporation, 25 S.W.2d 695 (Dallas Civ.App., 1930, writ ref.); and Woods v. Bost, 26 S.W.2d 299 (Amarillo Civ.App., 1930, writ dism.).

■ We hold that each of the three above referred to items of evidence were admissible against Bolin Oil Company as being admissions against interest. It will be noted that in sub-paragraph C of defendant's trial amendment set out early in this opinion the defendants alleged that *the men conducting the operation at the time the tubing was dropped failed to conduct operations in a good and workmanlike manner in that they failed to close the elevators from which the tubing was suspended and that such omission was a proximate cause of the loss of the well.* In Bolin Oil Company's pleading filed against Leach in the other suit *they charged that these same men were negligent in that they failed to properly latch or close the elevators from which the tubing was suspended and that this omission was a proximate cause of their damage or of the loss of the hole.*

■ A problem presented to us is whether admissions such as those involved here have probative force sufficient to create a fact issue as to whether or not the men operating the Leach Construction Company rig at the time they dropped the tubing into the well failed to conduct such operations in a good and workmanlike manner.

We hold that the admissions do have sufficient probative force to raise the issue.

■ The law is that admissions by a party contained in a pleading that he filed in another case are not conclusive against him and such party can offer other evidence tending to explain or contradict such admissions. Such admissions are, however, evidence that the jury is entitled to consider in deciding the issue and the probative value of such evidence is a question of fact for the jury. Louisiana Ry. & Nav. Co. v. Cotton, 1 S.W.2d 393 (Dallas Civ.App., 1927, no writ hist.); Parham v. Montagne, 238 S.W.2d 732 (Beaumont Civ.App., 1951, ref., n. r. e.); McMillan v. Gage, 165 S.W.2d 754 (Austin Civ.App., 1942, ref., want merit); 31A C.J.S. Evidence § 382, p. 935, Note 18; Henry v. Publix Theatres Corporation, 25 S.W.2d 695 (Dallas Civ. App., 1930, writ ref.); Gulf, Colorado and Santa Fe Railway Co. v. Hanks, 308 S.W.2d 165 (Fort Worth Civ.App., 1957, rev. on other grounds in 159 Tex. 311, 320 S.W.2d 333); Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726 (1941); Ryals v. Garza, 264 S.W.2d 548 (Dallas Civ.App., 1953, ref., n. r. e.); and Gulf, C. & S. F. Ry. Co. v. Combes & Rector, 80 S.W. 1045 (Tex.Civ.App., 1904, no writ hist.).

The only other evidence offered during the trial bearing on the question of whether the well was lost through negligence or because of a failure to conduct drilling operations in a good and workmanlike manner was the testimony of W. R. Hopkins who was the drilling superintendent for Bolin Oil Company. He testified in substance that he was at the well site at the time the tubing was dropped and that he was telling the Leach Construction Company crew what he wanted them to do. He then testified:

"Q What happened?

"A The men dropped the tubing.

"Q All right. And what's the effect of dropping the tubing?

"A Well, they dropped twelve hundred feet which weighs about fifty-five hundred pounds with a tool on the bottom that can set under pressure, and when it set somewhere down in the hole it took the casing too in numerous places.

"Q Okay. And as a result of that did you have to abandon the well?

"A We did.

.    .    .    .    .    .

"Q Well, tell us how it happened.

"A Well, actually I wasn't looking right directly at it. There was a water truck drove up about the same time, and I was spotting the water truck. We were getting ready to fract the well. And Haynes Brothers from Chillicothe brought the water out there. And he slacked off on his tubing and somehow or other he let down faster than his tubing fell, and it dropped. And when it dropped, the elevators come unlatched and dropped the tubing in the hole."

This evidence was admitted without objection and no attempt was made by appellant to lay a predicate to show that it was not admissible and that it was not entitled to probative force.

Plaintiff's third and fourth points of error are that the trial court erred in submitting Special Issue No. 1 to the jury because (in point 3) there was no evidence to raise the issue and (in point 4) there was insufficient evidence to raise the issue.

Issue No. 1 was: "On the occasion in question was the crew of Leach Construction Company acting as employees of Bolin Oil Company or were they acting as the employees of Leach Construction Company, an independent contractor?"

The charge defined "employee" and "independent contractor" and then instructed the jury as follows: "If you find from a preponderance of the evidence that the crew of Leach Construction Company were, on the occasion in question, acting as employees of Bolin Oil Company, you will answer 'They were acting as employees of Bolin Oil Company,' otherwise, you will answer 'They were acting as employees of Leach Construction Company' . . . . " The jury's answer was: "They were acting as employees of Bolin Oil Company."

We overrule plaintiff's third and fourth points of error.

■ The question presented is whether a fact issue was raised by the evidence as to whether or not the Leach Company crewmen had on the occasion in question become the borrowed servants of the plaintiff herein.

In the case of Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.Sup., 1963), at page 225 the court said: "Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence."

The only testimony in the case that bears on this issue was given by W. R. Hopkins, the plaintiff's production superintendent. He testified in substance as follows: his duties are to supervise the drilling and producing of all the oil wells that Bolin Oil Company owns; he was the head man on this job and was calling the shots on the occasion when the tubing was dropped and the well lost; he was running the show as to what was to be done and as to how it was to be done; he was the boss and was controlling the situation there; he was in charge and supervised how they went about it; that if they did not do it the right way or the way he wanted them to go about it, he had the right to stop them

and tell them how he wanted them to go about it; they were doing what he told them to do that day; if they did not go about the job the way he told them to, he had the right to tell them to do it the way he wanted it done; that he did not have to control the details of the work because it appeared to him that it was being done properly; but if he felt he should because of something they were doing he could have stopped what they were doing because he was in charge; the fact that he did not exercise control did not mean that he did not have control; he was in control of the well completion job, including how it was to be done; he was in charge of the manner in which the Leach crew went about accomplishing their work.

We hold that the testimony of Hopkins outlined above was sufficient to raise the fact issue presented by Issue No. 1. It is true that this same witness testified to facts that were somewhat contradictory to his testimony above outlined. His entire testimony created a fact issue on the borrowed servant question which was for the jury's determination.

In defendants' third counterpoint they contend in substance that they are entitled to a judgment in their favor under the facts of this case regardless of how the jury answered Issue No. 1 and regardless of whether or not there was sufficient evidence to support the jury's answer to that issue.

Under defendants' contention, even if the court erred in submitting Issue No. 1, as plaintiff contends in its third and fourth points, such error would be harmless.

We are convinced that the defendants' contention advanced in this third counterpoint is correct.

The elements of the defense pleaded by defendants were: (1) that the plaintiff failed to drill the well in a good and workmanlike manner; and (2) that because of such failure they were damaged in that the well was lost.

The jury found, and we have held, that there was sufficient evidence to support their finding, that upon the occasion in question the men that plaintiff had working on the completion rig at the time the tubing was dropped into the hole did not perform the work they were then doing in a good and workmanlike manner. The jury also found in answer to Issue No. 3 that such failure was a proximate cause of the well being lost and of defendants' damages.

Plaintiff was obligated by the operating agreement between the parties (above referred to) to do the following things, among others: to conduct the drilling operations upon the oil well in question and to do the job in a good and workmanlike manner and with due diligence and to furnish in connection therewith all machinery, equipment, labor, water, fuel and rotary rig. The agreement gave plaintiff sole and exclusive charge of all drilling and production operations conducted on the leases owned by the parties.

The agreement between the parties thus imposed on the plaintiff the legal duty or obligation of drilling and completing the oil well in question in a good and workmanlike manner.

The plaintiff, driller, can not escape or avoid the legal duty or obligation imposed upon it by the contract to drill and complete the oil well in a good and workmanlike manner merely by assigning out or delegating a part of their performance of the contract to Leach Construction Company. This would be true even if the latter is an independent contractor.

The principle involved is discussed in Restatement of the Law of Contracts, Section 160, entitled "Delegation of Performance of a Duty or a Condition". Subsection (4) thereof is as follows: "Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extin-

guishes it or prevents recovery of damages from him (obligor) if the duty is not performed." And from that same section at page 200 of that work is the following: "Comment on Subsection (4): . . . It is only by a novation that a duty can be extinguished by the substitution of a new obligor who assumes it. After a delegation of performance, in the absence of a novation . . . the obligee still has his original right against the obligor in spite of any words by which the obligor has attempted to substitute another in his place as subject to the duty, or by which the person delegated purports to assume it; . . . ." And at page 201 of the same Restatement is the following: "Illustration of Subsection (4): 4. A contracts with B to have the grass cut on B's meadow. A delegates performance to C, who contracts with A to assume the duty. C begins performance with B's assent but fails adequately to complete the undertaking. A is liable to B."

■ The situation referred to in the illustration is almost exactly the situation we have in the case being considered. Bolin Construction Company (plaintiff) contracted with defendants to drill the oil well in question in a good and workmanlike manner. The contract imposed that legal duty on the plaintiff to so drill the well. Plaintiff attempted to farm a part of the performance of that duty out to Leach Construction Company. The jury found that Leach Construction Company failed to perform the work they were doing on the well in a good and workmanlike manner and that this failure proximately caused the loss of the well.

We hold that plaintiff is liable to defendants for the resulting damages and that plaintiff's liability to defendants for those damages exists regardless of whether or not Leach Construction Company's crew were the plaintiff's borrowed servants upon the occasion when they dropped the tubing into the well and thereby caused the loss of the hole.

In support of our holding on this point we also refer to Corbin on Contracts, Vol. 4, Sec. 866, p. 452, and Sec. 865, p. 434. The following is from Sec. 866, p. 452: "The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped."

The following is from Crane Ice Cream Co. v. Terminal Freezing & Heating Co., 147 Md. 588, 128 A. 280 (Ct. of App., 1925), at page 283: ". . . one who is bound to any performance whatever . . cannot by any act of his own, or by any act in agreement with any other person than . . . the one to whom his performance is due, cast off his own liability and substitute another's liability. If this were not true, obligors could free themselves of their obligations by the simple expedient of assigning them. A further ground for the rule is that, not only is a party entitled to know to whom he must look for the satisfaction of his rights under the contract, . . . one who is bound so as to bear an unescapable liability may delegate the performance . . . to another, . . . . In such circumstances the performance of the third party is the act of the promisor, who remains liable under the contract and answerable in damages if the performance be not in strict fulfillment of the contract. (Cites cases)"

See also in support of this holding Brown v. Bowers Const. Co., 236 N.C. 462, 73 S.E.2d 147 (Sup.Ct.1952).

Plaintiff's Point of Error No. 5 is that the court erred in rendering judgment for defendants because under the undisputed evidence the defendants' defense to plaintiff's cause of action was barred by the two year statute of limitations.

We overrule this point.

Plaintiff says in its brief that the tubing was dropped into the well "around the end of March or the first of April, 1969." The following is also from plaintiff's brief: "While the defendants plead in their original answer filed June 4, 1970, that they

were 'entitled to recover damages proximately caused by the plaintiff's breach of conduct and/or negligent conduct' . . ."

The exact wording of defendants' original answer filed on June 4, 1970, is: "(Paragraph) IV. Plaintiff breached the terms of such operating agreement and by reason of such prior breach, the Defendants have no liability to Plaintiff. (Paragraph) V. The Defendants are entitled to recover damages proximately caused by the Plaintiff's breach of contract and/or negligent conduct of Plaintiff which more than offsets the Plaintiff's claim as alleged in Count 1 of its Original Petition."

Defendants' prayer was that plaintiff be denied a recovery and that defendants recover such other relief that they may show themselves entitled.

█ We hold that the allegations of defendant's original answer were broad enough to and did include the matter of setoff that is involved in this case and it was filed prior to the lapse of two years from the time the tubing was dropped into the well and that the setoff sought by defendants was therefore not barred by limitations.

There is another reason why defendants' claim for setoff is not barred by limitations.

Plaintiff's suit seeks recovery of defendants' pro rata part of the cost of drilling the oil well. Plaintiff's action is based on the written agreement wherein defendants agreed to pay plaintiff such sums. The consideration for defendants' agreement to pay these sums was the agreement of plaintiff, contained in the written agreement, to drill the oil well involved in a good and workmanlike manner. When plaintiff sued defendants for their proportionate part of the cost of drilling the well, the defendants alleged that the consideration which they were to receive in exchange for their agreement to pay the costs had failed in that plaintiff breached its agreement to drill the well in a good

and workmanlike manner, and that as a result of such breach the well was lost; and that they were entitled to set off as against their proportionate part of the cost of drilling the well the damages that they sustained by reason of plaintiff's failure to furnish the consideration that it agreed to furnish, to-wit: the drilling of the well in a good and workmanlike manner.

█ The cases hold that the statute of limitations is not applicable where the subject matter of the defense is strictly by way of defense and operates merely as a negation of plaintiff's right to recover.

█ This case comes under that rule and the statute of limitations does not apply.

A case very closely in point is Preston v. Williams, 427 S.W.2d 157 (Eastland Civ. App., 1968, no writ hist.). Plaintiff there sued on a note which was given plaintiff in exchange for his agreement to build defendant a house. Defendant there asked for setoffs or a credit against the note for the damages he suffered because of plaintiff's failure to build the house in a good and workmanlike manner in accordance with the plans and specifications. There the court held that the subject matter of defendant's counterclaim did not constitute an independent cause of action that limitations would bar because it went to the very foundation of the cause of action asserted by plaintiff in the suit on the note in that the note was given as a part of the consideration for building the house in accordance with the contract.

See also Mason v. Peterson, 250 S.W. 142 (Tex.Com.App., 1923) and Tyrrell Combest Realty Co. v. Ellis, 127 S.W.2d 598 (Beaumont Civ.App., 1939, writ dism. judgm. cor.).

█ We are also convinced that defendants' claim of right to the setoff is based on the written contract. Defendants pleaded that plaintiff breached that agreement and thereby caused the loss of the

well. Under the holding in the case of Westbrook v. Watts, 268 S.W.2d 694 (Waco Civ.App., 1954, ref., n. r. e.), the court's charge and the definitions contained therein sufficiently submitted the case on a breach of contract theory. So if it can be said that the statute of limitations did apply to defendants' defense of setoff, we hold that the applicable limitation statute would be the four year statute and not the two year limitation statute. Even under plaintiff's contention this defense was not barred if the four year statute is applicable.

In plaintiff's sixth point of error it contends that the court committed reversible error in excluding parts of the affidavit of the witness, Hopkins.

We overrule this point.

The substance of the part of the affidavit that was offered by defendants and admitted by the court is set out hereinabove. The plaintiff then offered into evidence all of the remainder of the affidavit and the trial court sustained defendants' objections to it.

One of the rules that determines the correctness of the ruling is stated in Rowan & Hope v. Valadez, 258 S.W.2d 395 (San Antonio Civ.App., 1953, ref., n. r. e.) as follows: "As a general rule, if one party introduces a part of a statement, the opposing party may introduce the balance of the statement. This rule is subject to the limitation that the part secondly introduced must bear some reasonable relationship to the first part and be in explanation thereof."

The part of the statement offered by defendants pertained to the question of whether or not Leach's employees were negligent when they dropped the tubing into the well.

The following contents of the affidavit is a part of that which was excluded:

". . . that neither the defendant (referring to Bolin Oil Co.) nor any of its . . employees had any control or supervision of any kind or character over such equipment and/or its operation." This equipment referred to was the elevators that permitted the tubing to drop.

It is the exclusion of this part of the statement which plaintiff says was prejudicial to it.

We are inclined to believe that the excluded part of the affidavit was admissible under the rule announced in the Rowan case supra, but even if the excluded parts of the affidavit were admissible, the error in excluding it was harmless because Issue No. 1, as above stated, is an immaterial issue under the facts of this case. Issue No. 1 is the only issue to which such excluded evidence relates.

We also conclude that even if error was committed in connection with the exclusion of part of the Hopkins affidavit that such error did not amount to such a denial of the plaintiff's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. We reach this conclusion regardless of whether or not Issue No. 1 is an immaterial issue.

Also during the trial the testimony of W. R. Hopkins, as given by deposition, was offered into evidence. In our opinion part of his deposition testimony that was offered in evidence by plaintiff was along the lines of the statements contained in the part of his affidavit that was excluded. It is not reversible error to exclude evidence where substantially the same evidence was admitted during the trial without objection. Under these circumstances, the error, if any, is harmless. See 4B Tex.Digest, Appeal and Error, 1051(1–c) at page 223 and cases there cited.

The judgment is affirmed.