# MARCH, 1938.

JOHN CANNON, RESPONDENT, v. S. S. KRESGE COMPANY, APPELLANT.— 116 S. W. (2d) 559.

Kansas City Court of Appeals. March 7, 1938.

174

*Allan R. Browne* for respondent.

*Henry L. Jost* and *Roger C. Slaughter* for appellant.

REYNOLDS, J.—This appeal comes to us from the Circuit Court of Jackson county at Kansas City, Missouri.

The action is one by the plaintiff to recover damages for the alleged loss of his wife's society, service, "and consortium," claimed to have resulted from personal injuries inflicted on her by reason of alleged acts of negligence on the defendant's part. The petition was filed in the Circuit Court of Jackson County at Kansas City, Missouri, on November 13, 1935.

The trial was before the judge of the court with a jury and resulted in a verdict and judgment for the plaintiff in the sum of $2687, from which judgment, after unsuccessful motions for a new trial and in arrest of judgment, the defendant prosecutes this appeal. The negligence charged and relied upon fully appears from the plaintiff's petition, which is as follows:

"Plaintiff states that he is the husband of Pearl Cannon, hereinafter known and described as the 'injured.'

"Plaintiff states that defendant is a corporation duly organized and existing according to law.

"For cause of action against defendant, plaintiff states that on or about the 10th day of November, 1934, while injured was a customer

of the store occupied by defendant, and leaving the premises occupied by defendant, by means of a door in the north side of defendant's store located at or near 3917 Main Street in Kansas City, Missouri, and while on and stepping from a step in the entrance way of said doorway, and which was a part of the entrance and exit at said place from said store, and which exit opened onto a parking station which is for the benefit of patrons of said store and other parties, she was negligently caused by defendant to fall and injure herself by reason of the negligence of defendant as hereinafter set forth.

''The point at which she fell was on and as she was stepping off of the step just outside the door, as mentioned above, which step constituted a part of the exit from said store.

''The negligence of defendant was as follows:

''1. Defendant negligently failed to keep and maintain said exit, including said step, at said time and place, in a reasonably well lighted condition so as to be reasonably safe for injured and others stepping and walking thereon, and negligently failed to provide a railing.

''Defendant negligently caused, allowed, and permitted said step and exit, including said step, at said time and place to be and remain in a not reasonably safe, and dangerous condition, and as an unsafe exit for customers of said store, in that the height of said step in said exit was irregular, being about level with the parking ground at the west end of said step and being about six inches above said parking ground at the east end, said parking ground being rough and uneven and sloping and the footing thereon insecure, so that persons, including injured, stepping thereon, were likely to, and would fall, said place being dark as aforementioned and said negligent condition caused and contributed to cause injured to lose her footing at said time and place and fall and injure herself. Said condition had been and remained in said negligent condition for a long time prior to said accident, and long enough for defendant, by the exercise of reasonable ordinary care under the circumstances to have known of and discovered the same in reasonable time thereafter to have reasonably remedied or reasonably repaired the same and thereby have avoided injuring injured, yet defendant negligently failed to so reasonably repair or reasonably remedy said dangerous condition, and as a direct result of said negligence, injured fell at said time and place and was injured as hereinafter set forth.

''The negligence of defendant as herein mentioned directly caused the following injuries and damage to injured:''

The petition at this point proceeds with a recital of the injuries alleged to have resulted from the negligence charged and of the damages to the plaintiff in the sum of $3000, for which judgment is sought.

The amended answer is a general denial, coupled with a specific denial by the defendant of any dominion or control of the premises upon which the plaintiff's wife was alleged to have been injured at the time she was injured as set out and described in the petition, setting up that the dominion and control of such premises were in the Ella Investment Company, a corporation, and denying that, at the time and place of her injury, she was an invitee of the defendant or was engaged in the transaction of any business with the defendant but, upon the other hand, averring that she was, at such time and place, an invitee of the said Ella Investment Company. The amended answer in substance further alleges that the plaintiff had asserted the claim and demand sued upon herein against the Ella Investment Company and that such claim and demand had been fully settled and discharged by said company and said company released from any liability on account thereof. The amended answer further tenders a plea of contributory negligence upon the part of the plaintiff's wife, in that she carelessly failed to watch the point from which she was stepping and the step upon which she was stepping at the time she received her injuries.

The plaintiff replied to the defendant's amended answer by way of a general denial.

The evidence substantially shows the following situation:

The Ella Investment Company, a Missouri corporation of which one David Werby was president, was the owner in fee of a large tract of land in Kansas City, located at the southeast corner of Thirty-ninth and Main Streets. Thereon, it constructed a two-story building, the ground floor of which was devoted to the conduct of merchandising shops, the upper floor to office suites. Most of the stores in this building fronted west on Main Street. One of these stores was occupied by the defendant. All of these stores had back doors which opened outward on a large automobile parking lot, reserved and operated by the Ella Investment Company for the use and accommodation without charge of persons desiring to drive and park their automobiles therein. Entrance was gained to said parking ground from the north, on the Thirty-ninth Street side, and around the east end of that part of the building which fronted north on that street. The surface of the parking lot was of cinders and gravel and sloped from the rear of the building west toward the east and was not smooth.

The defendant's occupancy was under a written lease. Its business was popularly known as a "Five and Ten Cent Store." The defendant's store building had a rear door opening outward into said parking lot, about three feet in width. Above this door on the outside was a sign, "S. S. Kresge Co., Entrance to Main St." There was no light over the door. Just below the sill of the door on the outside, there was a slab which formed the threshold to the door. The only

way to get into the store from the parking lot was over this threshold, from which you stepped up into the door; and the only way to get out of the door, in making an exit from the store building to the parking lot, was over this step or slab. The threshold was about three feet wide, north and south. The west side of the threshold was about three inches high or above the ground; and the east side about fourteen inches above the ground, making an abrupt pitch in a brief space. The west one-half of the step was level, and the ground pitched from there very rapidly both to the east and the north. The threshold was a little wider east and west than the door. The parking lot sloped north and east from the building. The step-up from the threshold to enter the door was two or three inches above the slab on the west side.

The accident in question happened at the rear door of the Kresge store on the north side, the door opening into the parking lot from said store.

The evidence further shows that, on the evening on which the plaintiff's wife was injured, she and her husband drove in their car from Thirty-ninth Street into the parking lot of the Ella Investment Company in the rear of the store building and parked their automobile in said lot, just a little west of the door. The parking lot was maintained as a free parking ground for the public and those having business to do with the lessees of the Ella Investment Company in the block. The accident occurred around 7:30 o'clock P. M., which was after dark at that time of the year. Another car was parked between the plaintiff's car and the rear door or entrance to the defendant's place of business. After having parked their car, the plaintiff and his wife walked together around the car between their car and the rear door of the defendant's store building over the surface of the parking lot and then upon the slab leading to the door, and stepped up onto the sill of the door and through the door into the store. The plaintiff's wife had never entered the store in that way before. She stopped in the store, where she did some shopping. The plaintiff passed through the store without stopping and out into Main Street. He soon returned to the inside of the store, and he and his wife left the store by the rear door through which they had entered, over which door in the store building was the word, "Exit." As she walked out, she had packages in her hand which she had purchased in the store. She stepped from the door sill down to the concrete slab and from there to the ground; and the plaintiff stepped down about the same time, either in front of or behind her. It appears that he stepped around and ahead of her while still on the slab. As he stepped from the slab to the surface of the parking lot, she was close behind him. As she stepped on the ground, her foot went down about fourteen inches. At the time that she stepped, she did

not know how far it was down from the slab to the surface of the parking station. It was dark, and there was no light. It was farther, however, than she had thought; and she fell. She stepped with her right foot first and tried to catch herself with her left foot; and, in doing so, she broke her ankle. She testified that, upon stepping upon the surface of the parking lot, her foot turned under her and she fell.

The plaintiff's wife suffered an injury to her back and her neck, and her right ankle was sprained. Her left ankle was also sprained and, in addition, broken. She was unable to turn her head. She was put under a doctor's care and taken to the hospital, where she was in bed practically five weeks. After being discharged from the hospital, she could not use her ankle for some time. For several months, she was on crutches and limped for quite a while thereafter. At the time of the trial, she still limped after having walked a few blocks. At such time, she was still troubled by the back of her neck and suffered from nervousness and was required to take more or less nerve medicine. Her ankle was still weak, and it was not safe for her to walk alone because the ankle gave away easily.

There was no railing on either side of the step or slab, and the plaintiff's wife had no knowledge of the condition of the slab and step. She fell as she stepped from the threshold in front of the door. She did not stumble. She fell because, when she stepped off the threshold, the ground was farther down than she thought it was. It was dark when she and her husband went into the store and when they made their exit from it and when she fell. The ground in the parking station was not lighted. Neither were the slab and the approaches to the rear door.

The evidence discloses that the plaintiff's wife has been unable to do her housework since she was injured and is unable to go out with the plaintiff as she did before her injury. The plaintiff does her heavy housework. The plaintiff had never entered the rear door from the parking station at night before. He had, however, entered in the daytime.

It was conceded that the parking lot was not a part of the premises leased to S. S. Kresge Company and that the Ella Investment Company operated the parking lot.

It further appears from the evidence that the plaintiff had made claims and demands against the Ella Investment Company by reason of the injuries to his wife and the consequent damages to himself and had filed a suit upon such claims and demands, which suit appears to have been settled, and that damages had been paid him by Ella Investment Company, the defendant therein. The petition in that case was introduced in evidence and appears in the record.

The plaintiff's wife likewise filed a suit against the Ella Investment

Company for her alleged injuries, which was afterward settled and dismissed by the plaintiff upon the receipt of her damages agreed to be paid her upon such settlement, upon a stipulation filed ''with prejudice, at the cost of the defendant.'' A like entry was made in the husband's case. The petition in the wife's case, so far as concerns its pertinent averments, was practically identical with that of the husband and also appears in evidence.

At the close of the plaintiff's case, the defendant requested an instruction in the nature of a demurrer to the plaintiff's evidence, directing a verdict for the defendant, which instruction was denied by the trial court. At the close of all of the evidence, the defendant again requested an instruction in the nature of a demurrer to the evidence, directing a verdict in the defendant's behalf, which was denied by the trial court. The cause was then submitted to the jury upon instructions given for both the plaintiff and the defendant, resulting, as stated, in a verdict for the plaintiff in the sum of $2687, upon which verdict a judgment was rendered for the plaintiff in the amount thereof.

## OPINION.

1. The defendant makes numerous assignments of error directed at the action of the trial court in submitting the case to the jury; in overruling its motion for judgment on the opening statement of the plaintiff's counsel; in refusing its requested instructions in the nature of demurrers, both at the close of the plaintiff's evidence and at the close of all of the evidence in holding that the demand sued upon in this action was not discharged by the written releases by the plaintiff and his wife on settlement of respective actions brought by them against the Ella Investment Company; in refusing to give certain instructions requested by it; in giving certain instructions requested by the plaintiff; and in refusing to hold that, as a matter of law, the plaintiff on his own evidence was barred from recovery in this action.

It makes further assignments directed at the action of the trial court in admitting alleged incompetent, immaterial, irrelevant, and prejudicial evidence and in refusing to admit alleged competent, relevant, and material evidence. It complains of the action of the trial court in making certain alleged or prejudicial comments on the evidence offered by the defendant. It complains that the verdict of the jury was invalid as to form and substance; that it was not responsive to the issues in the case and did not dispose of all of the same; that it was not responsive to the pleadings nor to the evidence nor to the instructions of the court; and that it was guess work on the part of the jury. It complains of the action of the trial court in receiving and entering said verdict of record. It likewise assigns

error on the part of the trial court in overruling the defendant's motion in arrest of judgment and its motion for a new trial.

2. We are met at the threshold of this case with the plaintiff's motion to dismiss the defendant's appeal for the reason that the defendant, in presenting such appeal, has failed to comply with the rules of this court in perfecting the same. It is unnecessary to set out the motion in full. Suffice it to say that it complains of the abstract of record made and filed by the defendant, in that it omits certain evidence in the case introduced by the plaintiff. However, it does not appear that the plaintiff filed with the clerk of this court and served the defendant with such objections to its abstract as required by section 1028, Revised Statutes of 1929; but, upon the other hand, it appears that the plaintiff has elected to file a supplemental abstract covering the omissions from the defendant's abstract, as it was privileged to do under the statute cited.

Another ground for such motion is that the defendant's statement in its brief violates the rules of this court and of the statutes in that it is not clear and concise statement of the case without argument, as provided in the statutes and in Rule 16 of this court, but that such statement is argumentative, emphasizing features favorable to the defendant and omitting features favorable to the plaintiff, which are necessary for a fair determination of the case, and that its assignments of error and points made are so interlocked and overlapped as to be confusing and are not such as to be clearly and distinctly made.

We have examined the defendant's statement and brief with the complaints made in mind; and, while we do not consider the statement and brief throughout a model in its compliance with our rules and while we do consider that it is subject to criticism to a limited degree in some particulars complained of, yet we do not think it is so subject to an extent that would justify a dismissal of the appeal. The motion to dismiss is denied. [Polk v. Missouri-K.-T. R. Co. (Mo.), 111 S. W. (2d) 138, l. c. 144 and 145.]

3. The first point made by the defendant is as follows:

"The Circuit Court should not have submitted this case to the jury. Defendant should have had judgment on counsel's opening statement, and on its demurrers to the evidence, and on its motion for a directed verdict at the close of all of the evidence."

The case was properly submitted to the jury.

There was no error upon the part of the trial court in denying the defendant's motion for judgment on the opening statement of the plaintiff's counsel. There is nothing in such statement pointed out to the trial court as a basis for the defendant's motion or any reason assigned by the defendant to the court at the time it was made why it should be sustained. Neither is there anything apparent in

the statement from which it might appear that the defendant was entitled to have such motion sustained; nor does the defendant here on this appeal (in its assignments of error, points and authorities, or argument), so far as called to our attention, point out or show wherein the court erred in overruling its motion and in denying it judgment on such statement.

4. In support of its proposition that the plaintiff did not make out a case to be submitted to the jury and that the trial court erred in submitting the case to the jury and in overruling the defendant's demurrers thereto, the defendant contends that the evidence fails to show any causal connection between the the stone slab from which the plaintiff's wife stepped and other approaches to the rear door or entrance to the defendant's store building, passed over by her in making her exit, and her fall and injury and that it fails to show that her injury was the proximate result of any negligent act or omission on the part of the defendant. It contends that the proximate cause of her injury was the condition of the parking ground, from which her footing when she stepped thereon from the slab became insecure, and not the negligent maintenance by the defendant of the slab and other approaches afforded by it for use in entrance into its store building and in making exit therefrom; that she did not fall in walking along and over the slab but fell on the premises of the Ella Investment Company; that the defendant had no control of the parking ground itself or the point where she fell or of the condition of the surface of the parking ground or lot at such point and was therefore under no responsibility for such condition; and that such control was in the Ella Investment Company. The defendant seems to proceed in part on the theory that the plaintiff's cause of action herein is based upon a violation of some duty by the defendant to maintain the parking ground, which was not under its control, in a reasonably safe condition for use by invitees on the parking ground.

It argues that the plaintiff's wife would not have been injured except for the condition of the surface of the parking ground, which rendered her footing insecure when she stepped upon it from the slab.

However, the defendant can not be heard to say that it was under a duty only to maintain the slab, in itself safe, and not under any duty to provide a safe step-off from such slab at a point at which the slab ended and from which a step-off to the surface of the ground below of some fourteen inches existed. The step-off was as much a part of the exit as was the slab itself. The defendant's contention that the plaintiff's wife would not have been injured except for the condition of the surface of the parking ground ignores other evidence in the record which tends to show that her injury was the immediate result of the step-off from the slab and that such injury would not have occurred except for the step-off.

The defendant contends that mere proof of negligence and injury is not sufficient; that there must be proof also from which a causal connection appears between such negligence and such injury and proof that such negligence is the proximate cause of such injury. Such contention may be conceded.

It contends further that it must be shown that, absent such negligent act, the injury would not have occurred and the burden is upon the plaintiff to make such showing. In this case, there are sufficient facts in the record upon which to base a finding that the injury to the plaintiff's wife was occasioned by the step-off. Ordinarily, the question of what is the proximate cause of an injury is a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact from all of the attending circumstances in evidence. [Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469; Kid v. Chicago, R. I. & P. R. Co., 310 Mo. 1, 1. c. 28 & 29, 274 S. W. 1079; McWhorter v. Dahl Chevrolet Co., 229 Mo. App. 1090, 88 S. W. (2d) 240.]

In 1 Thompson's Commentaries on the Law of Negligence, section 75, it is said: ''If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury.'' This doctrine is approved as a true statement of the law in Miller v. United Rys. Co. of St. Louis, 155 Mo. App. 528, 134 S. W. 1045.

If, therefore, there is evidence in this case tending to show that the plaintiff's wife's injury was the proximate result of the defendant's negligence in its failure to maintain the entrance to and exit from its door in a reasonably safe condition and in permitting an exit with a step-off of fourteen inches therein at the end thereof, rendering it unsafe and dangerous, then the fact that her injury may also have been the proximate result of the negligence of the Ella Investment Company in maintaining an insecure surface upon its parking station lot at the immediate end of such means of exit provided is no defense. If a defendant is negligent, he is liable, although his negligence is not the sole negligence involved or the sole proximate cause. [O'Bauer v. Katz Drug Co. (Mo. App.), 49 S. W. (2d) 1065; McWhorter v. Dahl Chevrolet Co., supra.]

It is important to remember that the petition in this case is based upon the violation of a duty by the defendant to its invitees and customers (including the plaintiff's wife) in failing to provide a reasonably safe means of entrance to its place of business and exit therefrom, in which petition it is alleged that the plaintiff's wife was injured by reason of the negligent failure of the defendant to make such provision and that, as a result thereof, she was injured, not only to her own detriment but to that of the plaintiff.

The evidence shows that the alleged negligent conditions complained of in violation of the defendant's duty existed for some two or three months prior to the injury of the plaintiff's wife, and for a space of time next prior to her injury within which the defendant should, in the exercise of ordinary care, have known and corrected them.

The entire claim of the plaintiff in this case rests upon the basis that the defendant violated its duty in negligently failing to furnish a reasonably safe exit from its store building for the use of the plaintiff's wife and others and in negligently failing to keep said exit in a reasonably safe condition for use and in negligently maintaining said exit in a condition which was not reasonably safe for use but which was dangerous, for a long time prior to the plaintiff's wife's injury, within which time, by the exercise of reasonable care upon its part, it should have discovered and known of such conditions and have remedied the same before the plaintiff's wife was injured by reason thereof and have avoided her injury.

It is entirely immaterial to the cause of action upon which the plaintiff's petition is based whether the defendant had any dominion and control of the parking lot in question where the plaintiff's wife was injured. It is nevertheless bound to provide a reasonably safe entrance to and exit from its store building through the door in question; and, if it chose to use as a part of its entrance and exit parts of the parking lot which rendered such entrance and exit unsafe, it is liable.

5. The law seems well settled that an invitation to enter premises, such as a store building, carries with it the duty to the invitee to provide reasonably safe means of entrance therein and exit therefrom and that, when the invitation is to a particular part of the premises, there is a duty to maintain the approaches afforded thereto in a reasonably safe condition for use. It was so held in Olds v. St. Louis National Baseball Club (Mo. App.), 104 S. W. (2d) 746, and Evans v. Sears, Roebuck & Co. (Mo. App.), 104 S. W. (2d) 1035.

In Wilson v. Jones (Mo. App.), 182 S. W. 756, it was held that, where a baggage man fell down a raised place leading to steps going to a stairway in an apartment, the landlord was liable, where there were poor lights and a sudden drop. The court stated, l. c. 758, that there was a duty to provide a reasonably safe ingress.

In English v. Sahlender (Mo. App.), 47 S. W. (2d) 150, where a patient sued a doctor for damages which she incurred upon entering his office, when she entered through a door and fell down some steps while going to a toilet, it was held that she had a right to recover.

The responsibility for this duty to maintain a reasonably safe entrance and exit cannot be avoided by a storekeeper through contracting with others to maintain such entrance and exit unless it be so

maintained. [Dagley v. National Coat & Suit Co., 224 Mo. App. 61, 22 S. W. (2d) 892.]

It has been held in Purdy v. Loew's St. Louis Realty & Amusement Corp., 220 Mo. App. 854, 294 S. W. 751, that an unexpected four-inch drop in a ramp in an exit leading to an alley way is negligence. In such case, the defendant theatre claimed that the alley way was to be used by automobiles. It did not own the alley way; the owner of the building owned it. Yet, the defendant theatre, which was a tenant of the building, was held liable on the theory of an unsafe exit.

In Smith v. Sears, Roebuck & Co. (Mo. App.), 84 S. W. (2d) 414, there was water in a vestibule entrance to a store. It was held that a storekeeper owed an invitee the duty to exercise ordinary care to keep its premises and the entrances thereto in a reasonably safe condition for the use of customers in transacting business.

See, also, McFarland v. Sears, Roebuck & Co. (Mo. App.), 91 S. W. (2d) 615, where a customer tripped over a wooden curbing from the store's parking lot to the rear of the store. It was held, when the store was sued for injuries sustained by the customer, that it was for the jury to determine whether the store owner permitted the curbing to remain on the approach from the lot to the store with insufficient illumination. The store claimed that the passageway was blocked by third persons, but the court refused to relieve it of liability on that account.

In Great Atlantic & Pacific Tea Co. v. Chapman, 72 Fed. (2d) 112 (C. C. A. Ohio), it was held that, where a man fell on a sudden stepdown from the vestibule outside of the front entrance, on the pavement, the store was liable for negligent failure to provide a reasonably safe entrance, where the strip of pavement was used for the entrance.

In another Great Atlantic & Pacific Tea Company Case (Great Atlantic & Pacific Tea Company v. McLravy, 71 Fed. (2d) 396 (C. C. A. Mich.), a customer slipped off a ledge between the sidewalk and the door, which was part of a vestibule. It was held that the storekeeper was required to exercise reasonable care to keep the access to his premises in a reasonably safe condition for use by the customers.

On the question of the attempt by the defendant to avoid liability for failure to furnish a reasonably safe exit, see Shouse v. Dubinsky (Mo. App.), 38 S. W. (2d) 530. Here, the defendant was a lessee of the theatre. The plaintiff charged that he left fire escape steps hanging over a public sidewalk and that the plaintiff, a pedestrian on the sidewalk, was walking so that his face struck them. The defendant was held liable. He pleaded a lease as a defense, which lease stated that the lessor was liable for all fixtures outside of the building. The court refused to release him from liability because of a contract with another party.

In Aiken v. Sidney Steel Scraper Co., 197 Mo. App. 673, 198 S. W. 1139, l. c. 1141 (a case by this court), the plaintiff went to the store of the defendant to purchase some machinery. He went down into the basement in an elevator with one of the employees, found what he wanted, came up on the same elevator, and had lunch with the employee. Returning after lunch, he was directed to go to the elevator by the employee, who stopped to chat with another employee. The plaintiff fell into the open elevator shaft and was injured. The defendant disclaimed liability on the ground that it did not control the elevator or the building. This court said, l. c. 1141 of 198 S. W.:

"(2) The idea is advanced that defendant, the Scraper Company, is not liable because it was not in control of the building and elevator; and cases are cited which we think have no bearing on the facts upon which plaintiff relies for his action. . . . When one 'invites the use of his premises for purposes connected with his own benefit,' the party becomes an invitee, and it is the duty of the person inviting him to take ordinary care to prevent an injury to him. . . .

"And there is neither justice nor reason in the idea that plaintiff, a customer invited into the building by the defendant, should be held bound by defendant's private contract as a subtenant."

The cases of O'Donnell v. Patton, 117 Mo. 13, 22 S. W. 903, and Lambert v. Jones, 339 Mo. 677, 98 S. W. (2d) 752, cited by the defendant in its brief, announce the same doctrine as the foregoing cited cases.

The duty of the defendant to furnish a safe entrance and exit is not, under all circumstances, to be determined by the exact boundaries of the premises which it has leased. Its duty in such regard does not always necessarily begin as the invitee steps into the building, nor does it end with the door through which the invitee makes an exit from such building. The defendant is bound to provide a reasonably safe way into and out of the building, through its entrance or exit, or to discontinue such entrance and exit; and, if he chooses to adopt as the way and means provided one not under his control which he may repair and maintain in condition but which is wholly under the control of another and becomes unsafe, he can not avoid responsibility.

Moreover, the means of entrance into and exit from the defendant's store building in this case was not common to the use of all of the tenants of the block in which the defendant's store building was located in entering their respective store rooms; but such means was exclusively for entrance into and exit from the defendant's store building. Customers were invited to enter the store building over the approaches provided from the parking station by the sign over the door on the outside thereof and were invited to go out over the same approaches by the sign over the door on the inside of the store

building. Under such circumstances, the defendant cannot be heard to say that it is responsible only for a safe exit through the open door to the outside of the door and not for a reasonably safe condition outside of the door over which the invitee must pass until such invitee reaches a final place of safety. Otherwise, it could be held to have discharged its duty if it delivered the invitee through the open door and over and into a precipice immediately outside the door. This is unthinkable. If it had no control over the premises on the outside of its building to provide a safe way or approach to the entrance to its building and to throw a light upon such entrance or properly to protect the entrance and approaches by railings, then it maintained such entrance at its peril, under such circumstances. It should have closed it and not have invited its use.

The fact that, in this case, it may have had a contract with the Ella Investment Company (the owner of the entire premises, including the parking lot) to keep and maintain the outer approaches to said entrance and door and the exit therefrom is immaterial. It could not contract against liability for its own negligent acts or omissions, nor could it impose upon another by contract the duty which was upon it to maintain the entrance, the approaches thereto, and the exit therefrom in a reasonably safe condition for use by its invitees and, by so doing, absolve itself from liability for failure so to maintain said entrance and exit.

In Restatement of the Law, Torts, section 360, p. 976, it is said:

"Comment: a. Effect of knowledge of dangerous condition on lessee or others. The rule stated in this Section applies to subject the lessor to liability irrespective of whether the lessee or those upon the land in his right know or do not know of the dangerous condition. If the lessee knows that common approaches to his apartment or office have been made dangerous for use by lessor's failure to perform his duty to maintain them in safe condition, the lessee may thereby become subject to liability even to his gratuitous licensees if he fails to warn them of the danger involved in using the common approaches."

There is evidence in the record in this case tending to show that the defendant violated its duty in such respects and did not maintain the approaches to its real door entrance in a reasonably safe condition for use by its invitees in entering its building and in making exit therefrom through said door.

From what has been said, it is clear that the defendant's point—as to the erroneous submission of the case by the trial court, the refusal of the defendant's demurrers by the trial court, and the refusal by the trial court to enter judgment upon the statement of the plaintiff's counsel—must be denied. The demurrers were properly denied. The submission of the case was fully justified.

6. The defendant's complaint with reference to the admission of evidence upon the part of the plaintiff to the effect that the height of the step-off above the surface of the ground was around fourteen inches, when the petition charged that it was only about six inches in height, as being a departure from the issues raised by the petition and being broader than the allegations thereof, is, under the circumstances in the record, not for review here. The record does not show that, at the time such evidence was offered and admitted, the defendant made any objection thereto to the effect that it was broader than the allegations of the petition and was a departure from the issues raised thereby. Not only must such an objection have been made by the defendant at the time; but it was further required to proceed in the manner required by sections 817 and 818, Revised Statutes of 1929, and to make and file an affidavit by said sections required in order to have its complaint reviewed upon this appeal. This is did not do. It therefore cannot now be heard. The rule is that, under such circumstances, the petition will be treated as amended and its allegations enlarged to admit such proof and to conform to such proof when thus admitted without objection. [Porter v. Equitable Life Assurance Society of U. S. (Mo. App.), 71 S. W. (2d) 766, 1. c. 775 and 776; Gannaway v. Pitcairn (Mo. App.), 109 S. W. (2d) 78.] The plaintiff, therefore, is entitled to the benefit of such proof.

The authorities cited by the defendant to the contrary are not applicable.

7. Neither is it material that the plaintiff's petition did not allege that the defendant was in control of the parking station nor that it was not based upon the violation of some duty by the defendant with respect to the maintenance and condition of said parking station. The cause of action alleged in this case is not at all dependent on any control the defendant may or may not have had of the parking ground.

It is further contended by the defendant that the surface of the parking ground was no part of the rear exit of the defendant's store. It assumes and practically concedes, however, for the sake of argument, that the "stone slab" over which the plaintiff's wife passed in making her exit from the defendant's store was a part of such exit. In answer to such contention, it is necessary to say only that if the slab was part of the exit—and it was—then the step-off therefrom was also a part of the exit.

It argues further that an owner of property or one in possession thereof is not bound to answer in damages for an injury to one using the same which he could not reasonably have anticipated and foreseen as likely to result from a normal use of the property. In Missouri, the doctrine of anticipation has been reduced to this: The liability of a person charged with negligence does not depend on the

question of whether in the exercise of reasonable prudence he could or should have foreseen the very injury occasioned and complained of; but he may be held liable for anything which, after the injury, appears to have been a natural consequence of his act or omission. [Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766; Obermeyer v. Logeman Chair Mfg. Co., 229 Mo. 97, 129 S. W. 209; McWhorter v. Dahl Chevrolet Company, *supra.*]

8. The defendant argues further that there is an absence in the record of any evidence tending to establish the defendant's control over the steps, walk, stone slab, and grounds exterior to the building which it occupied as a storeroom, as a lessee of the Ella Investment Company. It has already been explained herein that it was not necessary to the plaintiff's cause of action set up in the petition that the defendant should have had any ownership, dominion, or control of the parking lot or the grounds exterior to the building occupied by it. If it chose to adopt such steps, walk, slab, and grounds exterior to its building as a safe means of entrance into and exit from its store building, and they were not safe, although not in its possession or under its control, it is nevertheless bound, the same as if they had been in its possession and under its control. The defendant in this case is merely charged with the failure to discharge its duty of maintaining the entrance to its store building by way of the door in question in a reasonably safe condition for such entrance and exit therefrom.

9. The contention of the defendant that the former suits by the plaintiff and his wife against the Ella Investment Company, of which settlement was made and upon which settlement damages were paid them, were a bar to the present action by the plaintiff is without merit. Such suits were upon an entirely different cause of action from that upon which the present suit is based. Such suits were based upon the theory of the violation of its duty by the Ella Investment Company to maintain its parking station in a reasonably safe condition for use by the plaintiff's wife and other invitees thereon. The court committed no error in excluding the judgments in such cases from evidence when offered by the defendant. The present suit is based upon the theory of the violation of a duty owed by the defendant to maintain ways of entrance to its store building through its rear door and exit therefrom in a reasonably safe condition for such entrance and exit, regardless of any control or lack of control of the parking grounds or the grounds in the rear of the building occupied by it. It could have closed up such entrance and, in such event, have been entirely in the clear.

10. The cases cited by the defendant in its brief touching the reservation by an owner or lessor of premises of stairways, hallways, landings, and approaches used in common by various tenants upon

such premises have no application here. None of the other tenants of the Ella Investment Company properties had anything in common with the defendant and its invitees with respect to the entrance into and exit from the defendant's store building. Such entrance and exit with within the exclusive control of the defendant.

11. Neither do the cases cited by the defendant in its brief to the effect that liability for the condition of real property is ordinarily dependent upon ownership or possession and control thereof, so far as such conditions relate to the parking station or lot in question, have any application to this case. The plaintiff's case is not based upon any negligence in the maintenance of the parking lot.

12. The defendant complains of the exclusion by the trial court of evidence when offered of the lease between the Ella Investment Company (the owner of the defendant's store building) and the defendant. It contends that by such lease the Ella Investment Company limited the possession of the defendant of the store building to the exterior of the building and that it reserved to itself the occupancy, use, and control of all of the premises exterior to the outside of said building, including the entire parking lot and the slabs and walks thereon and agreed to keep the same in repair.

If competent in evidence for any purpose in this action, the lease was competent only for the purpose of showing the limits of the premises leased to the defendant and for the purpose of showing that they did not include any of the premises being used as a parking lot and showing that the premises leased to the defendant covered only the building in which the defendant had its store and did not include anything exterior thereto. These facts were admitted by the plaintiff on the trial. It was therefore unnecessary to introduce the lease for that purpose.

The defendant could not absolve itself from liability by reason of its omission to perform the duty which the law imposed upon it by imposing the obligation for the performance of such duty upon the owner of the premises through the means of a lease or the provisions of any contract. The defendant could not thus contract against liability for its own negligence. There was no error on the part of the trial court, under the facts in the record, in excluding the lease from evidence when offered.

13. The contention of the defendant that, in using the approaches to the rear door of the defendant's store building in making entrance into and exit therefrom, the plaintiff's wife was not using the same on the defendant's invitation is without merit. The uncontradicted evidence shows that the door was maintained for her entrance and that of others into the building and for their exit therefrom. There was a sign above the door on the inside, "Exit." There was a sign above the door on the outside, "S. S. Kresge Co. Entrance to Main

St.'' The maintenance of the door with the signs above it was a clear invitation to any and all who desired to enter the store from the parking lot or to leave the same from the inside to do so through said door and over the approaches and walks leading thereto, which were the only way in and out.

The defendant contends that there could be no implied invitation on its part to the plaintiff's wife to use the parking grounds of the Ella Investment Company. Such is true, but the plaintiff's case is not based on any such invitation. The authorities cited by the defendant in such connection, therefore, have no application.

The defendant cites a number of cases from foreign jurisdictions, which it is unnecessary to consider. The cases from our own courts fully cover the field.

15. The contention that, by the reserved control of the Ella Investment Company of all parts of its premises exterior to the leased store building occupied by the defendant, for an automobile parking ground for the use of all of its tenants and their invitees in its buildings, the liability of the defendant springing out of its failure to provide a reasonably safe means of entrance into and exit from its store building was excluded is not well made.

The claim against this defendant and the one against the Ella Investment Company are separate and independent, and the adjudication of the plaintiff's claim and that of his wife against the Ella Investment Company for the failure of that company in its duty to maintain its parking station in a proper condition for use is in no sense a bar to the plaintiff's present claim against the present defendant upon an entirely different cause of action.

16. The defendant makes the further contention that the plaintiff cannot predicate any actionable negligence on the alleged failure of the defendant adequately to light the parking lot and parts of the Ella Investment Company reserved by that company and cites in connection with such contention the case of Sherman v. Alexander & Sons (Mo. App.), 108 S. W. (2d) 616. While it may be conceded that it was not the duty of the defendant to light the parking lot and parts thereof reserved by the Ella Investment Company as such, yet it was its duty to have properly lighted the parts thereof, including the walk and other approaches used by it as parts of the entrance to its store building and of the exit therefrom, the only way of making entrance to the store building through said door and exit therefrom; and this it could have done by throwing from its building a sufficiently strong light for that purpose. The defendant's invitation to the plaintiff's wife was to use the approaches forming a part of its entrance and its exit; and it was its duty to see that the same were properly lighted at night, when necessary to the safe use of the same, in order that its invitees might safely use the same. There

was in this case no duty upon the Ella Investment Company to the plaintiff's wife or other of the defendant's invitees properly to light the same. That duty was upon the defendant.

17. The entrance way to the defendant's store and the exit therefrom and the walks and slabs over which entrance thereto was made (appropriated by the defendant) were for the exclusive service to its building and for the exclusive use of the defendant and its invitees. There is no question in this case of the duty of a landlord or owner of premises to light the common stairways, porches, hallways, or passageways for the use of various tenants in such premises, in common use by all such tenants, as was the case in the case cited and relied upon by the defendant; and that case therefore has no application to the facts of this case.

It was proper for the plaintiff to show, as an incident to the defendant's failure to maintain the entrance to its store building and the exit therefrom in a reasonably safe condition, that such entrance and exit was not sufficiently lighted at night. There is evidence tending to show that it was dark at the time of the plaintiff's wife's injury and that the exit from the defendant's store, which she was using, was not sufficiently lighted and that, while in the use thereof, she could see only the outlines of objects forming a part thereof and that the view of such outlines was confused by shadows cast upon and over said exit by insufficient lights as they fell upon objects in the darkness. The plaintiff's wife was unacquainted with such entrance and exit and did not know of the step-off in the exit from the slab or walk to the ground.

The defendant makes the further contention that the plaintiff was not entitled to recover in this case by reason of the contributory negligence of his wife in the uses which she made of the approaches to and the exit from the plaintiff's store, forming a part of the entrance thereto and the exit therefrom. It likewise contends that the plaintiff was not entitled to recover by reason of his own contributory negligence in failing to advise his wife of the conditions involved in the entrance and exit from the defendant's store building. The contributory negligence of the plaintiff was not set up in the answer.

18. The evidence was not such as to convict the plaintiff's wife of contributory negligence as a matter of law. It was such, at best, as to be of a doubtful character only and to be solved by a jury. [Aiken v. Sidney Steel Scraper Co., *supra.*]

19. No question of the plaintiff's contributory negligence arises upon the law under the facts in the record. At the time of the plaintiff's wife's injury, he was proceeding over the exit from the store immediately in front of his wife; she was proceeding over the exit immediately behind him or near his side; he had never been

over this exit before at night. It is not shown that, as he proceeded over the exit, he saw anything in connection therewith, whether of a dangerous character or otherwise, which she did not also see or that he had knowledge of any dangerous defect therein which she did not also have that might have placed any legal duty upon him to give her warning thereof or to caution her with reference thereto. She had possession of all of her faculties. She was not injured as the result of any active negligence or omission on his part, as might have been the case if she had been riding in an automobile driven by him and had been injured by his negligent operation of the same or where she was injured by reason of his negligent act, as in the cases cited by the defendant in its brief under this head. He did not wrongfully induce her to make exit through the door of the defendant's building over the slab or walk or to step off therefrom. The plaintiff was neither the guardian of his wife's person at the time of her injury, nor was he acting in any respresentative capacity for her or as her agent. Neither the authorities cited by the defendant in its brief in this connection nor the principles upon which they were determined have any application here.

Nor does the doctrine applied in cases where a parent negligently suffers his minor child to enter a place of known danger or himself takes the child into such place, where the child is injured, whereby the parent is precluded from the recovery of any damages on account of such injury to the child by reason of such parent's negligence, have any application here. The authorities cited by the defendant in its brief in such connection have no application here. The doctrine applied in those cases rests upon an entirely different foundation from that found here. The husband here did not stand in the relation of a parent to his wife.

20. The second point made by the defendant relates to alleged error on the part of the trial court in admitting evidence of the plaintiff and his wife concerning her pain and suffering as a result of her injuries, in that the same was incompetent and prejudicial. When the plaintiff's wife was a witness, after having described her injuries, she was asked the following questions by the plaintiff's attorney and gave the following answers:

"Q. What was done by you when they got you home? A. They called the Doctor.

"Q. And where were you put while you were waiting for the Doctor? A. Well, I was put in a chair and had my foot in a bucket of hot water to relieve the pain."

The defendant's counsel, immediately thereafter and before any further proceedings were had, moved to strike out the part of the answer, "to relieve the pain," for the reason that the matter of pain which the witness had suffered did not have anything to do

with the plaintiff's suit; that the only question was as to what her disabilities were and not as to what pain she suffered or personal experiences she may have had; that the petition in the case was based by the plaintiff on the loss of the companionship and the loss of the society of the witness (his wife) and the loss of her services.

It was ruled by the trial court that the plaintiff could not recover for any pain suffered by the witness but that the evidence was nevertheless competent as showing the extent to which he (referring to the plaintiff) was denied the companionship and society of a well woman.

The witness was thereupon permitted to answer that she had suffered pain at the time of and after her injury and was permitted to locate said pain as being principally in her left ankle and also in her right ankle. She was permitted also to detail some of the injuries which she had received.

The evidence thus admitted and refused to be stricken by the court upon the motion of the defendant was competent for the purposes indicated by the trial court. [Cullar v. Missouri, K. & T. Ry. Co., 84 Mo. App. 347.]

The defendant further complains that the court erred in refusing to withdraw such evidence from the jury, as requested by its refused instruction 3. The court properly ruled the instruction.

The pain suffered by her was not submitted to the jury as an element of the damages for which the plaintiff could recover.

21. Another point made by the defendant relates to the plaintiff's testimony to the effect that he received no part of the $750 paid by the Ella Investment Company on the settlement of the suits of himself and his wife against that company, which suits were, upon such settlement, dismissed by the plaintiff and his wife with prejudice at the cost of the defendant therein, for the reason that the written instrument executed by the parties upon such settlement was the best evidence of what he received and that the plaintiff could not contradict such written instrument by his verbal testimony. It does not appear that such written instrument distributed the money between the plaintiff and his wife upon their respective suits. Testimony as to such distribution was therefore competent. There was no error on the part of the trial court in allowing the testimony of the plaintiff.

22. Another point made by the defendant is to the effect that the plaintiff was improperly permitted to testify as to his expenditures for doctors' bills and that the trial court committed error in refusing to discharge the jury on account thereof. As bearing upon such objection, the record shows the following question by the plaintiff's counsel: "Mr. Cannon, approximately how much have you paid out in doctor bills so far?" This was objected to by the defendant's counsel because a statement by the witness in answer thereto would

not have been evidence of the reasonableness of the expenditures and the witness was not qualified to testify as to the reasonableness of professional services.

It was ruled by the court that it was competent for him to testify how much he had paid but that there would be no issue of that kind submitted to the jury unless there should be evidence that such were reasonable, and the witness was thereupon permitted to answer and stated that he had paid in excess of $100 to Dr. Parsons. Immediately following such statement by the witness, the court interjected the following: "Just a moment here. Just a moment. You haven't pleaded any doctor bills in the . . . Gentlemen ." speaking to the jury "—all of the evidence about any payment of doctor bills is stricken out and not to be considered by you in deliberating upon your verdict." The counsel for the defendant thereupon called to the attention of the court that, in such state of the record, the admission of the evidence was nevertheless highly prejudicial, to which the court thereupon replied, "No, it wont be submitted to the Jury at all." The defendant's counsel thereupon moved the court for a new jury, which motion was by the court overruled, from all of which it does not appear that the plaintiff was permitted to testify as complained of by the defendant.

It does not appear that the trial court abused its discretion in the matter of overruling the motion to dismiss the jury. Moreover, the testimony of the plaintiff complained of was withdrawn from the jury by the defendant's instruction E. The defendant's complaint is without merit.

23. Another point made by the defendant relates to alleged error on the part of the trial court in refusing to allow the cross-examination of the plaintiff as a witness and in denying the defendant's offer to prove that the plaintiff had, for a long time prior to the injury of his wife, many times used said parking grounds and the stone slab thereon leading to the rear of the defendant's store and to the store itself as a passageway from said parking place to Main Street and knew of the condition of said parking place at the time that he was with his wife when she fell and was injured.

The record does not disclose at the points indicated therein by the defendant in its brief in making such point that the court refused to allow cross-examination of the plaintiff as a witness; but, upon the other hand, it shows that the defendant was permitted to examine and cross-examine the plaintiff as a witness at length upon all of the material and relevant issues in the case and that only incompetent questions were refused. It was permitted to ask the witness at length concerning his use of the parking ground in question for quite a length of time prior to his wife's injury and his knowledge of the conditions therein, including the condition of the walk serving

as a part of the entrance and exit to the defendant's store, and elicited the answer from the plaintiff that he had only made occasional use of such grounds. The witness testified that all of his visits to the parking station were in the day time and that he knew nothing about conditions there at night as to lights and that he had never been there at night prior to the injury of his wife. There was no evidence elicited or sought to be elicited touching his knowledge of the step-off. He was examined with reference to his suit and that of his wife against the Ella Investment Company and the settlement thereof and the dismissal of such suits.

24. The defendant introduced in evidence on the trial the photograph of the exterior of the defendant's store building and the parking station in the rear of such building, including the approaches and entrance thereto, showing a railing along the sides of said approach and entrance. It complains of the action of the court in refusing to allow it to show that such railings and other improvements along the walk and entrance were made by the Ella Investment Company after the plaintiff's wife fell and was injured. It was immaterial who erected such railings and made such improvements in the entrance and exit as to any issue in this case, whether the Ella Investment Company or the defendant. Moreover, the record shows that Mr. Werby, a witness for the defendant and the president of the Ella Investment Company, testified that the Ella Investment Company placed such railings there and put the steps in after Mrs. Cannon was injured, so that there is nothing left to the defendant's objection, if it had been good, which it was not.

25. The defendant also complains in such connection of caustic and prejudicial comments by the court concerning the photograph and other evidence offered by it. The record, however, fails to show any such comments by the court or any objection by the defendant to the alleged attitude of the court or to any remarks made by it in that connection.

26. The criticisms by the defendant of the plaintiff's Instruction 1 are not well made. It followed the petition and the evidence and properly declared the law. There were no assumptions of facts made therein, but the determination of the facts was clearly left to the jury. It did not impose on the defendant the duty to keep the entire exterior of the premises in a reasonably well lighted condition but limited the jury to the questions bearing upon a safe exit.

27. Likewise, the criticisms by the defendant of the plaintiff's Instruction 2 are without merit. The instruction in writing or "Covenant Not to Sue" entered into by the plaintiff and his wife with the Ella Investment Company, upon the settlement of their respective suits against it, expressly provided that such agreement was not a settlement or discharge of liability; and, anyhow, such suits were upon

an entirely different cause of action than the cause of action upon which this suit is based and had no relation to it; and this defendant was not interested therein. There is no merit in the criticisms made by the defendant of the plaintiff's given Instruction 3 as modified by the court. The instruction is not subject to the criticisms made.

Some complaint is made of such instruction by reason of the fact that it gave wide open authority to the jury to assess damages for the loss of the service, aid, society, companionship, "and consortium" of his wife by reason of her injuries; and the defendant complains expressly that, by reason of the words "and consortium," the instruction was made broader than the evidence and, for such reason, was bad. It appears that, however, by its Instruction A which it offered, the defendant employed the term "and consortium" in the same connection as did Instruction No. 3 for the plaintiff. Such complaint of the plaintiff's Instruction 3 is not now, therefore, open to it.

28. Complaint is made by the defendant of the refusal of its Instruction O. Such instruction was not only a comment on the evidence, but it was argumentative and made an assumption of facts. It wholly ignored the theory of a reasonably safe exit and the conditions relating to the irregular surface of the ground and of whether such irregular surface of the parking station existed as a part of the exit from the defendant's store. It was confusing and misleading. It was properly refused.

29. Complaint is made of the form of the verdict of the jury and that it was not lawful and that it did not dispose of all of the issues submitted. The verdict of the jury was in the following words: "We, the jury, find the issues for the plaintiff, and do assess his damages at ($2,687.00) two thousand six hundred and eighty-seven dollars. Donald J. Walker, Foreman." The verdict was in approved form, and no possible objection can be made to the form thereof. It passed upon all of the issues in the case and resolved the same in the plaintiff's favor. The defendant filed no counterclaim in the case and asked no affirmative relief. The issues involved and submitted did not require a verdict containing separate findings. Under the plaintiff's testimony that he received no part of the sum of $750 paid by the Ella Investment Company upon the settlement of his suit and that of his wife, the jury was not required to reduce a verdict for him by the sum of $750 or any part thereof. Neither was it required to return a verdict for the full amount for which judgment was prayed in the petition.

30. The defendant makes complaint of error on the part of the trial court in refusing its requested instructions B-1, C, F, H, and I. We have examined the errors assigned and the points made and arguments advanced by the defendant with reference to each of said in-

structions; and we are of the opinion that no error was committed by the trial court in refusing any of said instructions. Instruction B-1 does not declare the law of this case. It was not entitled to Instruction C. The plaintiff was entitled to have the jury consider the pain suffered by his wife as a result of her injuries as showing the extent to which he was denied the companionship and society of a well woman. [Cullar v. Missouri, K. & T. Ry. Co., *supra.*] Her pain was not submitted as an element of his damages but only for the purpose of showing the extent to which he was denied the companionship and society of a well woman. In Cullar v. Missouri, K. & T. Ry. Co., *supra,* l. c. 350 of 84 Mo. App., it is said: ''The society of a wife who is suffering from constant pain caused by an injury wrongfully inflicted, is not so pleasant or beneficial as the society of a healthful and uncomplaining wife. In such instance there is a social loss. One may be deprived of the society of another in greater or less degree though they be in each other's presence.'' Instruction F did not properly declare the law as hereinbefore found by this court in the body of this opinion. It ignored the use by the defendant of certain portions of the premises exterior to the building occupied by it as part of the entrance to and exit from its building. While the defendant may not have been responsible to the plaintiff for the conditions exterior to the building as such, yet it was responsible to the plaintiff for the failure to maintain a safe way of entrance into and exit from its building; and, if it used as a part of such certain portions exterior to its building which rendered such entrance and exit unsafe, it was responsible to the plaintiff therefor. Instruction H, aside from being objectionable as a comment on the evidence, sought to impose a legal duty upon the defendant which the law does not impose. The plaintiff did not stand in the relation of a guardian to his wife or as her parent. The instruction was properly refused. There was no evidence in the case upon which to base the defendant's Instruction I. An accident is an event resulting in an injury proceeding from an unknown cause or from a known cause without human agency or fault. Such must appear from the evidence. [Hogan v. Kansas City Public Service Co., 322 Mo. App. 1103, 19 S. W. (2d) 707.] And the accident must occur without human fault. [Kaley v. Huntley (Mo. App.), 88 S. W. (2d) 200.] The evidence in this case pointed to the plaintiff's wife's injury definitely as a result of negligence upon the part of the defendant.

31. The defendant complains that the case was submitted by the trial court on the confused theory that it was as much responsible for the condition of the parking ground as for the condition of the stone walk or stone slab and for the maintenance of an adequate light, as shown by Instruction G given and Instruction O refused. Instruction G was given at the instance of the defendant; and In-

struction O was offered by it, so that, if the trial court submitted the cause on a confused theory at all, it was because the defendant asked it to do so; and it now has no cause for complaint.

32. The defendant makes the following point: "The court erred in the exclusion of the circuit court records showing the final judgments rendered and entered in the respective cases of plaintiff's wife and of plaintiff himself against the Ella Investment Company—" Such judgments were not in any sense effective as a bar to the plaintiff's cause of action in this case and were properly excluded by the trial court when offered by the defendant upon that or any other theory. The petitions in those cases and the written instrument made in settlement of them were in evidence, as were likewise the stipulations of dismissal upon the settlement of both.

The defendant complains of error upon the part of the court in overruling its motions in arrest of judgment and for a new trial. The complaint as to overruling the motion in arrest is based upon the alleged invalidity of the verdict. The issues raised as to the validity of the verdict have hereinbefore been determined adversely to the defendant's contention. The point made of error in the overruling of the motion for new trial is without specifications of wherein the error lies and is too general to present anything to us for review. Its complaint with reference to the overruling of both the motion in arrest and its motion for new trial is overruled.

We have disposed of all of the assignments of error and points made by the defendant, together with innumerable and detailed complaints otherwise made by it. This opinion has been stretched to an undue length, rendered necessary by the points presented for decision and detailed complaints made.

The judgment of the trial court is affirmed. All concur.