**Albin FINKE, Appellant,**

v.

**Gloria WHEATFALL et al., Appellees.**

**No. 1647.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 26, 1978.

Rehearing Denied May 17, 1978.

Charles E. Fitch, DeLange, Hudspeth, Pitman & Katz, Houston, for appellant.

Michael Crawford, Fender & Crawford, Houston, Oliver S. Kitzman, Brookshire, William F. Jackson, Claude B. Lilly, Hempstead, Ben L. Adams, Jr., Houston, for appellees.

J. CURTISS BROWN, Chief Justice.

Mary Valentine and the collateral heirs of Dan Gaston filed a petition to partition the Dan Gaston 50-acre tract of land in Waller County, Texas. Valentine alleged that she was the owner of an undivided one-half interest in the tract as the devisee under the will of one Pearlie Steptoe Gaston. Certain alleged collateral heirs of Dan Gaston claimed ownership in the other one-half by virtue of the statute of descent and distribution. Writ of partition was issued, a receiver was appointed, and the property was sold to Albin Finke (appellant) in De-

cember 1974. On March 20, 1975, the appellees filed their motion for new trial to set aside the judgment based on citation by publication under provisions of Rule 329 and a cross-action in the nature of trespass to try title.

Following a nonjury trial, judgment was rendered setting aside the granting of the writ of partition, the receiver's deed pursuant thereto, and the report, sale and order confirming the sale *insofar as they affected the interest awarded to appellees.* The judgment was in favor of the appellees as against the defendants in the trespass to try title action who defaulted. Judgment was also rendered granting the appellees *an undivided one-half interest in the property being the community interest of one Mary Jane Young Gaston.*

In due course, the trial court made the following findings of fact in the cause submitted to it: Dan Gaston and Mary Jane Young were married ceremonially in Waller County, Texas on December 18, 1917. Mary Jane Young Gaston had one child, Elizabeth Gaston, who was born on February 2, 1910. Following their marriage, Dan and Mary Jane Gaston had no other children. During the marriage, Dan and Mary Jane purchased the 50-acre tract of land in question from Fritz Horn (Horn) by general warranty deed with vendor's lien dated January 30, 1919. The marriage continued until the death of Mary Jane in 1942. The grantor of the land released the vendor's lien on the realty described and quitclaimed to Dan Gaston by release and deed dated November 1, 1924. From January 30, 1919 until October 3, 1942, Dan and Mary Jane lived and resided on the 50-acre tract that had been conveyed to them by Horn. Elizabeth Gaston, the daughter of Mary Jane Gaston, had five children. The appellees are the children of Elizabeth Gaston, along with the five children of her daughter Adelle Robinson, who died intestate. Dan Gaston, the surviving spouse of Mary Jane Gaston, married Pearlie Steptoe. After 1943, Dan Gaston and his new wife did not live on the land and it was never their residence. On August 1, 1969, an affidavit of heirship was

filed in the deed records of Waller County asserting a claim of ownership in the property on behalf of the appellees, who are the direct descendants of Mary Jane Gaston, the first wife of Dan Gaston. In 1971, the appellant met with the appellees and offered to purchase the 50-acre tract from the appellees, but no trade was consummated. On January 6, 1973, Pearlie Steptoe Gaston, the second wife and surviving widow of Dan Gaston, died testate leaving her estate to Mary Valentine. The appellant then entered into negotiations in which he sought to acquire the property through Mary Valentine. Pursuant to this effort, an heirship proceeding for *Dan Gaston* was instituted in the County Court of Waller County. No service of citation was made or attempted in said heirship proceeding on the appellees, and none of them had any notice of such proceeding. In February 1973, the appellant employed and delegated to the Hempstead Abstract Company and his attorney and agent Claude Lilly the responsibility for determining the title to the 50-acre tract in question. At all times after February 1973, these agents of Finke possessed, and had actual knowledge of, the affidavit of heirship filed by the appellees. Those agents also had actual knowledge that ad valorem taxes on this tract had been continuously paid by one of the appellees. No service of citation in the partition suit had been had upon the appellees, nor did any of them have any notice of any kind of the proceeding until after the order of partition and sale.

On November 30, 1974, a writ of partition was issued by the district court of Waller County, Texas. The court found, in substance, that no partition in kind was possible and ordered a receiver to be appointed to sell the real estate described as:

> 50.174 acre tract of land situated in W. E. Baker Survey, Abstract No. 70, Waller County, Texas. Said 50.174 acre tract being called a 50 acre tract of land in deed dated January 30, 1919, from Fritz Horn to Dan Gaston recorded in Vol. 77, Page 323 of the Deed Records of Waller County Texas. Said 50.174 acre tract being described as follows: Beginning at 1¼ inch iron pipe at fence corner for S.E. corner of this tract at North side of Courtney Public Rd. as road turns South. Said corner being in East line of W. E. Baker Survey and West line of W. J. White Survey. Said corner bears North 2049.0 feet from recognized Southwest corner of the Dudley J. White Survey and Southwest corner of the Frederick estate. Thence South 89° 6" W. along North line of Courtney Public Rd. 1521.60 feet to iron rod found for Southeast corner of the Meineke 50.89 acre tract of land. Thence N 1° 23' W. along a marked cut line of old fence line 1424.73 feet to iron rod found for Northeast corner of said Meineke tract and Northwest corner of this tract. Thence N 89° 25' 5" E. along a cut and marked line along old fence line 1555.89 feet to iron axle for Northeast corner of this tract in West line of Frederick estate tract. Thence South along cut and marked line along fence line 1416.22 feet to point of beginning. Containing 50.174 acres of land with [encroachment] of 0.067 acre on the East line of this tract and 0.139 acre on North side of this tract leaving a fenced acre of 49.968 acres of land as surveyed by W. D. Kennedy, Registered Surveyor No. 511, December 12, 1974.

On December 17, 1974, the receiver sold the tract of land in question to the appellant. At that time, less than 30 days had passed since the entry of the order of partition on November 30, 1974. The appellant had actual knowledge of the appellees' claim to the land in question at all relevant times. The heirship proceeding in the estate of Dan Gaston did not describe the tract of land originally conveyed to Dan Gaston and Mary Jane Gaston by the deed from Horn. The petition to partition was similarly deficient. The appellees first had knowledge of the proceedings in the partition suit about January 31, 1975, and thereafter filed a motion for new trial and a trespass to try title suit. This motion and suit were filed less than two years after the signing of the writ of partition on November 30, 1974. The trial court further found that certain

named defendants had been duly served with citation in the trespass to try title suit and had wholly failed to appear and answer. A motion for default judgment which had been made by the appellees with respect to these defendants was granted.

Appellant has duly perfected his appeal and assigns nine points of error. These points may be fairly summarized as follows: (1) that the appellees introduced no evidence identifying the property claimed nor establishing its location on the ground; (2) that the appellees introduced no evidence of record title to the 50-acre tract of land in controversy; (3) that the trial court erred in finding that Dan and Mary Jane Gaston had purchased the land in dispute from Fritz Horn; (4) that the trial court erred in rendering judgment in favor of the appellees with respect to the defaulting defendants; and (5) that the court erred in permitting the witnesses Garrett and Lilly to testify with respect to the location of the property on the ground.

The appellant's contentions relating to lack of sufficient evidence of identity and location of the property and his claims as to the inadmissibility of the evidence given by the witnesses Garrett and Lilly are related and will be discussed together. The appellant testified and described the property in question as being the "Dan Gaston" place. He also testified that he was familiar with the land, that it was fenced, that it had been cultivated, and that the remains of the Dan Gaston residence were located on the property. He further testified that he had been in possession of the property in question since December 1974. He employed Mr. Lilly and Hempstead Abstract Company to do the title work for the purchase of the Gaston tract. Mr. Lilly also acted as his attorney in the transaction in which he purported to purchase the tract in question from the receiver. The appellant knew that he was undertaking to purchase the Gaston property. Mr. Lilly testified that he knew about the affidavit of heirship filed on behalf of the appellee, the release of the vendor's lien note from Horn to Gaston, an oil and gas lease in 1933 from Gaston to Camp, and other items reflected by his business records. He testified that the title policy was based upon a survey made by a registered public surveyor of the legal description of the tract in the W. E. Baker Survey, Abstract 70. The witness Garrett testified that the description of the property in the partition suit failed to name the state in which the property was located and made no reference to an abstract or to the name of a survey. She also testified that the description in the petition and citation by publication failed to close. The appellant also testified that before he undertook to purchase the property from Mary Valentine he had a meeting with the appellees in which he made a cash offer to purchase the property for $250 an acre and that he knew that he was dealing with the Dan Gaston 50-acre tract. He further testified that at the time when he was dealing with the others he was dealing with the same tract. We are basing our decision in this case on superior title from a common source.

The appellees, however, offered instruments including the patent from the State of Texas to Walter E. Baker on April 8, 1856. They also offered a deed from J. A. Danford to Fritz Horn identifying the tract in Waller County, Texas. The deed is difficult to read but appears to describe the property as follows:

Beginning at a pin oak sapling 4 in in dia on the west Boundary line of the J. E. Baker Survey, the North East Corner of a survey formerly made by F. Schultz from which a post oak 14 in dia marked M brs. S. 77½ W. 13 varas. Thence N.1 W. 528½ vrs. to stake for corner. Thence S. 89 W. 534 varas to a red oak 6 in. in dia. for corner. Thence S. 1 E. 528½ vrs. to stake from which a red oak 4 in in dia marked H brs. S. 11½ W. 3 vrs. Thence N. 89 E. 534 varas. to place of beginning. Containing 50 acres of land out of the John Baker survey.

The appellees then introduced the deed from Fritz Horn to Dan Gaston, which contained the following description of the same property:

Beginning at a pin oak Sapling 4 In″ in diameter on the W. boundary line of the

J. E. Baker survey, the N. E. cor. of a survey formerly owned by F. Schultz from which a post oak 14 in. in Dia. marked M. brs. s. 77½ W. 13 vrs; Thence N. 1 W. 528 vrs. to stake for cor; Thence S. 89 W. 534 vrs. to a red oak 6 in. in dia. for cor. Thence S. 1 E. 528½ vrs. to a stake from which a red oak 4 in. in dia. mrkd. H bears S. 11½ W. 3 vrs; Thence N. 89 E. 534 vrs. to the place of beginning, containing fifty (50) acres of land, being the same land [conveyed] to Fritz Horn by J. A. Danford and [wife by] deed dated Nov. 9, 1901, to which deed [reference] is here made for more particular description.

The release of the lien securing the debt on the Gaston tract was executed November 1, 1924. It referred to the Horn deed to Gaston of January 30, 1919. The contract of sale between Valentine and Finke contained the following description:

Beginning at a pin oak Sapling 4″ in dia. on the W. boundary line of the J. E. Baker Survey the NE cor. of a survey formerly owned by F. Schultz from which a post oak 14″ in dia. marked M brs. S. 77½ W. 13 vrs; Thence N. 1 W. 528 vrs. to a stake for cor.; Thence S. 89 W. 534 vrs. to a red oak 6″ in dia. for cor.; Thence S. 1 E. 528½ vrs. to a stake from which a red oak 4″ in dia. mrkd. H bears S. 11½ W. 3 vrs.; Thence N. 89 E. 534 vrs. to Place of Beginning, containing 50 acres of land.

Lilly's records disclosed a right-of-way easement to Waller County referring to 50 acres out of the W. E. Baker Survey, Abstract No. 7, and described as being on

that 50 ac tr out of W. E. Baker Surv Ab 70 desc in deed fr Fritz Horn to Dan Gaston rec 77/323 & de sc as foll: BEG: at SEC of sd 50 ac tr, a stk in EL of W. E. Baker surv & run W with SL sd 50 ac tr & to SWC thereof; TH N with WL sd 50 ac tr 50′; TH E & parallel with SL of sd 50 ac tr to EL & EL of sd Baker Surv; TH S with EL of sd 50 ac & sd° W. E. Baker Surv 50′ to pl of beg for purp of constr a permanen pub rd.

The tax certificates identified the property as Abstract Number 70 of the W. E. Baker Survey containing 50.174 acres and rendered as a 50-acre tract. These taxes were paid by one of the appellees. The Gaston tract was surveyed by W. D. Kennedy Registered Surveyor No. 511, December 12, 1974, and was described as follows:

50.174 acre tract of land situated in W. E. Baker Survey, Abstract No. 70, Waller County, Texas. Said 50.174 acre tract being called a 50 acre tract of land in deed dated January 30, 1919, from Fritz Horn to Dan Gaston recorded in Vol 77, Page 323 of Deed Records of Waller County, Texas. Said 50.174 acre tract being described as follows: Beginning at 1¼ inch iron pipe at fence corner for S.E. corner of this tract at North side of Courtney Public Rd. as road turns South. Said corner being in East line of W. E. Baker Survey and West line of W. J. White Survey. Said corner bears North 2049.0 feet from recognized Southwest corner of the Dudley J. White Survey and Southwest corner of the Frederick estate. Thence South 89° 6′ W. along North line of Courtney Public Rd. 1521.60 feet to iron rod found for Southeast corner of the Meineke 50.89 acre tract of land. Thence N 1° 23′ W. along a marked cut line of old fence line 1424.73 feet to iron rod found for Northeast corner of said Meineke tract and Northwest corner of this tract. Thence N 89° 25′ 5″ E. along a cut and marked line along old fence line 1555.89 feet to iron axle for Northeast corner of this tract in West line of Frederick estate tract. Thence South along cut and marked line along fence line 1416.22 feet to point of beginning. Containing 50.174 acres of land with [encroachment] of 0.067 acre on the East line of this tract and 0.139 acre on North side of this tract leaving a fenced area of 49.968 acres of land . . . . .

The appellant identified the tract for which he had negotiated with both the collateral heirs of Gaston and the direct descendants of his deceased wife as being the land in question. Lilly identified the land as being the same land sued for by the

appellees. Throughout the record, the land is referred to as the Dan Gaston tract or the Dan Gaston 50-acre tract. All of the instruments introduced following the deed from Horn to Gaston, including the surveyor's description, made reference to that deed with the exception of the description contained in the partition citation by publication, the writ of partition, the Valentine contract of sale, and the petition to partition.

We consider the testimony and records of Lilly, who was acting as the agent and attorney for appellant with respect to this matter, to have been admissible. *See Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex.Sup.1977). Furthermore, we think the evidence fully justified the findings of the trial court identifying the tract in dispute and an adequate description for its location by that court. Documents prepared for a party and with his authorization are admissible as "admissions by adoptions." *Thornell v. Missouri State Life Ins. Co.*, 249 S.W. 203, 205–08 (Tex.Com. App.1923, jdgmt. adopted); *Bolin Oil Company v. Staples*, 496 S.W.2d 167, 172–73 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.). The appellant's points one, two and six are overruled.

We agree with the appellant that the appellees failed to show uninterrupted chain of title emanating from the sovereign to the appellees. No deed was introduced from the original patentee, Walter E. Baker, to J. A. Danford, who conveyed the land to Fritz Horn, who in turn conveyed the property in question to Dan Gaston at a time when he was married to Mary Jane Gaston. It is elementary that a plaintiff in trespass to try title may not only recover upon the basis of record title, but may also rely upon a title from a common source, limitation, or from possession of the property at a time antedating the defendant's possession. 56 Tex.Jur.2d *Trespass to Try Title* § 7 (1964). The judgment of the trial court in this case is fully supportable by the showing made by the appellees of superior title emanating from a common source. Proof was offered that the appellant

claimed title through a devisee of Dan Gaston's *second wife*, through *collateral heirs* of Dan Gaston and through collateral heirs of Jim Gaston (Dan Gaston's brother), whom the appellant claimed was the beneficial owner of the property.

The appellees, on the other hand, claimed as direct descendants of Mary Jane Gaston who owned her community one-half interest in the land. The record would have supported a finding by the trial court that Dan Gaston recognized the daughter of his first wife (Mary Jane Gaston) as his child and, thus, upon the subsequent marriage, legitimized her. However, the court made no such finding and it is unnecessary for us to consider such evidence or appellees' contentions of limitation title. The trial court awarded the appellees only the community one-half interest of their mother and grandmother, to which the appellees are entitled by direct inheritance under the findings made by the trial court. The appellant's point of error number three is overruled.

The appellant, by his point five, contends that the finding by the trial court that Dan and Mary Jane Gaston purchased the property in dispute from Horn is against the overwhelming weight and preponderance of the evidence. Appellant's contention in this regard is based upon the following recitation in the deed from Horn to Gaston:

> the sum of Four Hundred ($400.00) DOLLARS to me cash in hand paid and secured to be paid by Jim Gaston, as follows: $100.00 cash, the receipt of which is acknowledged and confessed, and the execution by the said Jim Gaston of his two promissory V/L notes of even date herewith for the principal [sum] of $150.00 each, due and payable September 1, 1919 and 1920 respectively . . . .

This recitation undoubtedly was sufficient to make a *prima facie* case of a resulting trust. *Burk v. Turner*, 79 Tex. 276, 15 S.W. 256, 257 (1891). There was, however, ample evidence to rebut any possible presumptions arising out of this recitation and to support the findings of fact made by the trial court.

The appellant chooses to ignore the fact that Dan and Mary Jane Gaston moved on the land and used it as their home until the death of Mary Jane Gaston. Jim Gaston was not shown to have had any further connection with the property whatsoever. No agreement was shown that before or at the time of the conveyance the legal title would be held by Dan Gaston for the benefit of Jim Gaston. *See Elbert v. Waples-Platter Co.*, 156 S.W.2d 146, 150 (Tex.Civ. App.—Fort Worth 1941, writ ref'd w. o. m.). The evidence is overwhelming in support of the proposition that the land was purchased by Dan and Mary Jane Gaston for their own use and benefit and that whatever connection Jim Gaston may have had with helping pay for the property was only incidental. The release of the lien securing the purchase price from Horn to Gaston, dated November 1, 1924, recited that on January 30, 1919 Horn had conveyed the property "to Dan Gaston." The release and quitclaim ran to "Dan Gaston, his heirs and assigns." Of course, this release and quitclaim was executed during the possession of the property and during the marriage of Dan and Mary Jane. The evidence is unchallenged that for many years Dan and Mary Jane farmed the property and lived on it as their home. Dan Gaston executed oil and gas leases and easements for rights of way across it. The finding of the trial court is not only not against the great weight and overwhelming preponderance of the evidence, but is more than amply supported in the record. The appellant's point is overruled.

The appellant contends, finally, that judgment should not have been rendered in favor of the appellees against the defaulting defendants in the trespass to try title suit. Tex.R.Civ.P. 799 provides:

> If the defendant, who has been personally served with citation according to law or these rules fails to appear and answer by himself or attorney within the time prescribed by law or these rules for other actions in the district court, then judgment by default may be entered against him and in favor of the plaintiff for the title to the premises, or the possession thereof, or for both, according to the petition, and for all costs, without any proof of title by the plaintiff.

The appellant's point seven is overruled.

We have carefully considered all of the appellant's points and they are overruled.

Affirmed.